**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

JOSEPHINE GIANZERO and
JENNIFER JENSEN,
individually and on
behalf of all others similarly situated,

       Plaintiffs,

v.

WAL-MART STORES, INC., a Delaware corporation;
CLAIMS MANAGEMENT, INC., an Arkansas corporation;
AMERICAN HOME ASSURANCE CO., a New York corporation;
CONCENTRA HEALTH SERVICES, INC., a Nevada corporation; and
JOHN DOES 1-10, whose true names are unknown

       Defendants.

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

Plaintiffs, Josephine Gianzero ("Mrs. Gianzero") and Jennifer Jensen ("Ms. Jensen") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), through their counsel, Koncilja & Associates, P.C., Steven U. Mullens, P.C., and Gold Bennett Cera & Sidener LLP, for their Class Action Complaint and Jury Demand ("Complaint") against Wal-Mart Stores, Inc. ("Wal-Mart"), Claims Management, Inc. ("CMI"), American Home Assurance Co. ("AHA"), Concentra Health Services, Inc. ("Concentra") and John Does 1-10 (the "Doe Defendants") (collectively, the "Defendants"), state and allege as follows:

# I.    <u>INTRODUCTION</u>

1.      In Colorado, workers who are injured on the job, such as Plaintiffs, are entitled by the Workers' Compensation Act of Colorado §§8-40-101, *et seq.*, C.R.S. (West, 2008) (the "Act") to receive medical treatment for their injuries without interference or dictation by their employer or the employer's insurance carrier.

2.      The Act requires that every employer furnish medical treatments, supplies, and apparatus "as may reasonably be needed…to cure and relieve the employee from the effects of the injury." §8-42-101(1)(a), C.R.S.

3.      Defendant Wal-Mart, in collaboration with defendants CMI, AHA, Concentra, and/or the Doe Defendants, and as a part of a pattern and practice, unlawfully and improperly dictates and controls the type and/or the duration of medical treatment received by its injured employees (such as Plaintiffs) in violation of Colorado law.

4.      Examples of Defendants' improper and unlawful conduct include, but are not limited to:

- Wrongfully dictating/directing treatment of injured Wal-Mart employees in violation of Colorado statutes, regulations, and common law;

- Wrongfully establishing directives which prohibit Concentra doctors and/or the Doe Defendants from prescribing certain medical treatments for injured Wal-Mart employees;

- Wrongfully placing restrictions upon the duration and/or type of treatments prescribed by Concentra doctors and/or the Doe Defendants;

- Wrongfully requiring Concentra doctors and/or the Doe Defendants to obtain "pre-authorization" from Wal-Mart, AHA and/or CMI for referrals to other treatment providers and/or for certain prescribed medical treatments;

- Wrongfully withholding, delaying and/or denying the authorization of treatment referrals made by Concentra doctors and/or the Doe Defendants;

- Wrongfully interfering with the treating physicians' exercise of independent medical judgment; and

- Wrongfully establishing policies, procedures, and practices designed to circumvent the statutory and regulatory processes for determination of the medical necessity of prescribed medical treatments.

5. Plaintiffs and the Class members have suffered and continue to suffer damages as a result of Defendants' unlawful and improper acts and omissions in connection with the medical treatment of injured Wal-Mart employees.

## II. **PARTIES**

6. Plaintiff, Josephine Gianzero, is an individual residing at 28 Frost Lane, Colorado Springs, Colorado 80916. Mrs. Gianzero sustained injuries while working at Sam's Club-8272, located at 715 South Academy Boulevard, Colorado Springs, Colorado 80910.

7.      Plaintiff, Jennifer Jensen, is an individual residing at 9608 Elkhart Avenue, Lubbock, Texas 79424.  Ms. Jensen sustained injuries while working at the Wal-Mart Store located at 3201 E. Platte Avenue, Colorado Springs, Colorado, 80909.

8.      Defendant, Wal-Mart Stores, Inc., is a Delaware corporation and maintains a place of business at 715 S. Academy Boulevard, Colorado Springs, Colorado 80910, among other locations within the District of Colorado.  Wal-Mart maintains a registered address in Colorado in care of its registered agent, The Corporation Company, 1675 Broadway, Suite 1200, Denver, Colorado 80202.  Wal-Mart maintains its principal place of business at 702 S.W. 8th Street, Bentonville, Arkansas.  Wal-Mart also does business in Colorado under the trade name, "Sam's Club."

9.      Defendant, Claims Management, Inc., is an Arkansas corporation, having a registered address in Colorado in care of its registered agent, The Corporation Company, 1675 Broadway, Suite 1200, Denver, Colorado 80202, and maintains its principal place of business at 105 N. Main Street, Bentonville, Arkansas 72712. CMI conducts business in Colorado, including acting as a claims adjuster for workers' compensation claims made by injured Wal-Mart employees.

10.      Upon information and belief, CMI is a wholly-owned subsidiary of Wal-Mart and operates out of Wal-Mart's physical plant in Rogers, Arkansas.  The CMI office responsible for adjusting claims made by injured Colorado Wal-Mart employees is located at 3901 Adams Boulevard, Bartlesville, Arkansas 74006.

11.     Defendant, American Home Assurance Co., is a New York corporation, having a registered address in Colorado in the care of its registered agent, Corporation Service Company, 1560 Broadway, Suite 2090, Denver, Colorado 80202, and maintains its principal place of business at 70 Pine Street, 30th Floor, New York, New York 10270.   Upon information and belief, AHA is Wal-Mart's workers' compensation insurance carrier in Colorado.

12.     Defendant, Concentra Health Services, Inc., is a Nevada corporation, having a registered address in Colorado in the care of its registered agent, Corporation Service Company, 1560 Broadway, Suite 2090, Denver, Colorado  80202, and with its principal place of business at 5080 Spectrum Drive, 1200 West Tower, Addison, Texas.   Concentra conducts business in Colorado at several locations, including 5320 Mark Dabling Boulevard, Colorado Springs, Colorado  80918.

13.     At all times material hereto, Concentra acted as Wal-Mart's "Corporate Medical Provider," and Concentra's employee-physicians acted as "authorized treating physicians" ("ATPs") for Plaintiffs and the Class members within the meaning of §8-43-404, C.R.S.

14.     Defendants, John Does 1-10, are persons or business entities whose true names are unknown, and who, upon information and belief, entered into contract(s) with Defendants Wal-Mart, CMI, Concentra and/or AHA whereby the Doe Defendants act as Corporate Medical Providers and/or ATPs for injured Wal-Mart employees.

### III.   JURISDICTION AND VENUE

15.     This Court has personal jurisdiction over Wal-Mart because it maintains a place of business at 715 S. Academy Boulevard, Colorado Springs, Colorado 80910 (among other locations within the State of Colorado) and because Wal-Mart engaged in the tortious acts as alleged herein in Colorado.

16.     This Court has personal jurisdiction over CMI because it transacts business in Colorado, because CMI has engaged in the tortious acts as alleged herein in Colorado, and because CMI maintains a registered agent and address for service of process within the State of Colorado.

17.     This Court has personal jurisdiction over AHA because it transacts business in Colorado, because AHA engaged in the tortious acts as alleged herein in Colorado, because AHA contracted to insure persons and/or risks residing in Colorado, and because AHA maintains a registered agent and address for service of process within the State of Colorado.

18.     This Court has personal jurisdiction over Concentra because it maintains a place of business at 5320 Mark Dabling Boulevard, Colorado Springs, Colorado, 80918(among other locations in Colorado) and because Concentra engaged in the tortious acts as alleged herein in Colorado.

19.     This Court has personal jurisdiction over the Doe Defendants because each transacts business in Colorado and each has engaged in the tortious acts as alleged herein in Colorado.

20.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1367 because this action arises under 18 U.S.C. §§1961-1968.  The Court also has diversity-based jurisdiction over the parties pursuant to 28 U.S.C. §1332(d)(2).  The claims asserted by Plaintiffs and the Class members meet the statutory minimum concerning the amount in controversy and at least one class member is a citizen of a state different from one or more of the Defendants.

21.     Venue is proper in the United States District Court, District of Colorado, pursuant to 28 U.S.C. §1391, because a substantial part of Defendants' acts or omissions giving rise to the injuries and damages sustained by the Plaintiffs and the Class members and giving rise to Plaintiffs' claims and the Class members' claims have occurred in the District of Colorado. Furthermore, Defendants transact business in Colorado, maintain registered agents in Colorado, and maintain multiple places of business in the District of Colorado.

## IV.    <u>GENERAL ALLEGATIONS</u>

**A.     Wal-Mart**

22.     Wal-Mart is the world's largest company.  In 2007, Wal-Mart had net sales of $374.5 billion, $12.7 billion in net income, and an aggregate market value of voting common stock of $108.8 billion.

23.     According to Wal-Mart's own website, Wal-Mart spent approximately $1.11 billion "in the state of Colorado" for merchandise and services in 2008, using 961 suppliers.

24.     According to the "Colorado Data Book," published by the Office of Economic Development and International Trade, Wal-Mart was Colorado's largest employer of private

sector employees in 2007, employing 24,686 persons.  This number has increased since 2007—as of January 2009, Wal-Mart employs approximately 26,170 "associates" in Colorado.

25.     Wal-Mart employs "associates" in Colorado at approximately fifty-six (56) "supercenters" (each having an approximate size of 185,000 square feet and carrying 142,000 items); nine (9) discount stores (each having an approximate size of 101,000 square feet and carrying 120,000 items); sixteen (16) Sam's Club stores (each having an approximate size of 130,000 square feet and carrying 5,500 items); and two (2) distribution centers.

26.     Wal-Mart, in connection with AHA and/or CMI, performs all adjusting functions for workers' compensation claims made by injured Wal-Mart associates in Colorado.

27.     In Colorado, workers' compensation insurers, their administrators and others having a special relationship with the insured owe a duty of good faith and fair dealing to the insureds, such as Plaintiffs and the Class members.

28.     Upon information and belief, Wal-Mart, CMI, and/or AHA have entered into undisclosed contractual relationship(s) with Concentra and/or the Doe Defendants whereby Concentra and/or the Doe Defendants agree to act as Wal-Mart's Corporate Medical Provider for claims made by injured Wal-Mart associates, with Concentra and/or the Doe Defendants' physician-employees acting as ATPs for the injured Wal-Mart employees.

29.     Pursuant to these contractual relationships and the Act, Wal-Mart refers its workers injured on the job to Concentra and/or the Doe Defendants for treatment of their injuries.

30.     The physician-employees of Concentra and/or the Doe Defendants act as ATPs for the injured Wal-Mart workers, evaluating the workers' injuries, providing primary treatment, and making referrals to other physicians/providers for additional or more specialized treatment (*e.g.*, surgeons, orthopedic doctors, physical therapists, etc.).

**B.     The Unlawful Dictation of Medical Care**

31.     Wal-Mart, CMI, and/or AHA, as part of a pattern and practice, unlawfully and improperly dictate(s) and/or interfere(s) with the type and the duration of medical treatment received by injured Wal-Mart workers, such as Plaintiffs and the Class members.

32.     CMI, AHA, Concentra, and the Doe Defendants, as part of a pattern and practice, aided and abetted Wal-Mart in implementing policies, practices and procedures designed to unlawfully and improperly dictate, withhold, delay, deny and/or interfere with the medical treatment of injured Wal-Mart employees.

33.     Upon information and belief, Concentra and/or the Doe Defendants assisted with the development of and/or agreed to follow Wal-Mart, AHA, and/or CMI's imposition of unlawful and improper restrictions on the treatment of injured Wal-Mart workers.

34.     Concentra communicates the medical treatment restrictions to its physician-employees in written directives (referred to by Concentra as "Flowsheets").

35.     Concentra requires its physician-employees to adhere to the Flowsheet treatment restrictions and/or requirements when acting as ATPs in the course of treating and/or making referrals for the treatment of injured Wal-Mart employees.

36.     The Flowsheets contain "Protocol Notes" which improperly direct and/or restrict the treatment of injured Wal-Mart workers.  For example, the Protocol Notes require the ATP to obtain "pre-authorization" from CMI for referrals to other treatment providers (*e.g.*, specialists) in direct violation of Colorado law.

37.     The unlawful and improper "pre-authorization" procedures, practices, and/or policies implemented by Defendants result in delays in the injured workers' receipt of treatment, denial of prescribed medical treatment, withholding of benefits and/or the inability of the injured workers to obtain medical treatment prescribed by their ATP.  Furthermore, delayed and withheld treatments compromise the injured workers' ability to fully recover from their injuries.

38.     In addition, CMI routinely denies authorization for treatment referrals by challenging the medical necessity of the referrals during the required "pre-authorization" communications with Concentra and/or the Doe Defendants.

39.     Despite the fact that two administrative law judges and the Industrial Claims Appeals Office determined that the Flowsheets and Protocol Notes unlawfully dictate treatment in violation of the Act, Defendants continue to treat injured Wal-Mart employees subject to the Flowsheets and/or Protocol Notes.

40.     Instead of following the statutory and regulatory procedures for challenging the medical necessity of a referral (which require, among other things, judicial determination of medical necessity in the event of a dispute), Defendants implemented policies, practices, and procedures designed to improperly and unlawfully bypass the regulatory and statutory

procedures applicable to determination of medical necessity, by forcing Concentra and/or the Doe Defendants to justify to CMI's adjustors the medical necessity of the prescribed treatment(s) in order to obtain pre-authorization for the referral.

41.     In addition to violating Colorado law, Defendants' conduct preempts the ATP's exercise of independent medical judgment and substitutes the preferences of CMI's adjuster for the expert medical judgment of the treating physician.

42.     Furthermore, by evading the regulatory and statutory procedures for determination of medical necessity of prescribed treatments, Defendants' conduct undermines the decisions of administrative law judges and/or substitutes the judgment of CMI's adjuster in lieu of the judgment of an administrative law judge, following a hearing and the opportunity for both sides to present evidence regarding medical necessity of particular treatments.

43.     The Flowsheets and Protocol Notes further dictate, restrict and/or withhold treatment by:

- Dictating how often a physician may treat injured Wal-Mart-workers;

- Requiring the ATP to call CMI if the ATP determines that it is necessary for the injured Wal-Mart employee to miss work;

- Prohibiting the ATP from prescribing any chiropractic treatment;

- Prohibiting the ATP from prescribing limited work schedules (*e.g.*, light duty);

- Requiring the ATP to obtain approval from CMI's adjusters before prescribing more than five visits to a physical therapist or an occupational therapist;

- Prohibiting the ATP from prescribing health club memberships; and

- Directing the ATPs to write prescriptions for Wal-Mart pharmacies only.

44. Upon information and belief, the policies, practices, and procedures Wal-Mart, AHA and/or CMI established with each of the Doe Defendants contain provisions which dictate, withhold, delay, deny and/or restrict treatment of the injured workers in a manner similar to the ways in which the policies, practices and procedures developed among Wal-Mart, CMI, AHA, and/or Concentra dictate withhold, delay, deny and/or restrict treatment.

45. Upon information and belief, the Doe Defendants have implemented similar directives containing restrictions similar to those contained in the Flowsheets and Protocol Notes.

46. Upon information and belief, the Doe Defendants and/or their employees treat injured Wal-Mart employees pursuant to the directives and restrictions agreed upon with Wal-Mart, CMI, and/or AHA.

47. Therefore, each time Concentra, a John Doe entity or a John Doe physician treats an injured Wal-Mart worker, Wal-Mart, AHA and/or CMI dictate(s) the treatment of the injured worker by restricting the ability of the ATP to make treatment recommendations, to make referrals and/or to write prescriptions.

48.     These restrictions constitute direct interference with the ATP's exercise of independent medical judgment.

49.     However, the ATPs are unable to challenge such interference, because Wal-Mart, CMI, and/or AHA control(s) payment to Concentra and/or the Doe Defendants, and Concentra and/or the Doe Defendants control(s) the terms of the ATPs' employment.

**C.     Plaintiffs and Others Similarly Situated**

50.     On or around November 26, 2005, while working at Sam's Club, Mrs. Gianzero fell, sustaining several injuries.

51.     Wal-Mart referred Mrs. Gianzero to Concentra for treatment of the injuries she sustained in the fall.

52.     On or around July 3, 2007, while working at Wal-Mart, Ms. Jensen was struck by a wooden pallet, sustaining several injuries.

53.     Wal-Mart referred Ms. Jensen to Concentra for treatment of the injuries she sustained.

54.     The treatment received by Plaintiffs at Concentra occurred pursuant to the Flowsheets and Protocol Notes, which dictated to Plaintiffs' respective ATPs the treatments Wal-Mart, CMI, and/or AHA would not authorize for treatment of their injuries, dictated the treatments the ATP was prohibited from prescribing for Plaintiffs, and directed the ATP as to the procedure for obtaining pre-authorization from CMI for specialist treatment referrals.

55.     Upon information and belief, these written medical directives were prepared by Concentra in accordance with its contract or contracts with Wal-Mart, CMI, and/or AHA.

56.     Upon information and belief, Wal-Mart, CMI, and/or AHA maintain similar improper and unlawful policies, practices, and procedures with all of their corporate medical providers and/or ATPs, including, without limitation, the Doe Defendants.

57.     Upon information and belief, the Doe Defendants adopted written medical directives in accordance with their respective agreement(s) with Wal-Mart, CMI, and/or AHA.

58.     Plaintiffs' medical treatment, like that of all other Wal-Mart employees, was subject to Defendants' improper and unlawful practices, policies and procedures, which dictate, withhold, delay and/or deny treatment and which deprive injured workers of their right to have their workers' compensation claims lawfully administered in accordance with Colorado law and/or in keeping with the duty of good faith and fair dealing owed to them by Defendants.

59.     As a proximate result of Defendants' unlawful and improper policies, practices and procedures, Plaintiffs and the Class members have suffered and will continue to suffer damages, in an amount to be determined at trial.

## V.     CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3) on behalf of a class (the "Class") consisting of:

> All persons who, within the applicable statute of limitations, have received or
> have attempted to obtain, are currently receiving or are currently attempting to
> obtain, or will in the future receive or will attempt to obtain, workers'
> compensation benefits for injuries sustained within the course and scope of their
> employment with Wal-Mart.

Excluded from the Class are officers and directors of Wal-Mart at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Wal-Mart has or had a controlling interest.

61.     In Colorado, all employees are covered by the employer's workers' compensation insurance for injuries sustained within the course and scope of employment.

62.     Upon information and belief, as of January 2009, Wal-Mart employed approximately 26,170 associates in Colorado.  In addition, the Class includes persons who are not currently employed by Wal-Mart, but who previously received treatment for injuries sustained while working at Wal-Mart.

63.     Thus, the members of the Class are so numerous that the individual joinder of all members is impracticable.

64.     Bringing such a large number of similar cases through the Colorado state court system and/or the District of Colorado court system would result in the inefficient use of judicial resources, the needless delay of meritorious cases, and would risk inconsistent results.

65.     The size of this class is manageable.

66.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members thereof.   Among the questions of law and fact common to the Class are:

a.    Whether Defendants' acts or omissions violated the statutes, regulations, and/or common law applicable to Colorado workers' compensation claims;

b.    Whether Defendants breached the duty of good faith and fair dealing each owes to Plaintiffs and the Class through their acts and/or omissions as alleged herein;

c.    Whether Defendants aided and abetted one another in breaching the duty of good faith and fair dealing each owes to Plaintiffs and the Class;

d.    Whether Defendants conspired with one another to breach the duty of good faith and fair dealing each owes to Plaintiffs and the Class;

e.    Whether Defendants violated Colorado common law, Colorado statutes, and/or Colorado regulations, including the Colorado Consumer Protection Act ("CCPA"), through their acts and/or omissions as alleged herein;

f.    Whether Defendants aided and abetted one another in violating Colorado common law, Colorado statutes, and/or Colorado regulations, including the CCPA;

g.      Whether Defendants conspired with one another to violate Colorado common law, Colorado statutes, and/or Colorado regulations, including the CCPA;

h.      Whether Defendants implemented practices or policies to dictate medical treatment of the Class members;

i.      Whether Defendants developed, established, participated in, aided, abetted and/or pursued a common and improper course of conduct designed to dictate medical treatment as described herein;

j.      Whether Defendants' acts and/or omissions resulted in an adverse impact on the Class;

k.      Whether and to what extent the Plaintiffs and other members of the Class suffered damages; and

l.      Whether Defendants' acts and/or omissions justify injunctive relief, other equitable remedies, and/or punitive damages.

67.    Plaintiffs are members of the Class.  Plaintiffs' claims are typical of the claims of the Class, as all of the claims have a common basis and originate from the same unlawful and improper bad faith practices of Defendants.

68.    Plaintiffs and all members of the Class are insureds under Wal-Mart's workers' compensation insurance policy(ies) and all were adversely impacted by Defendants' common practices, policies, and procedures that improperly dictate, delay, deny and/or withhold medical

treatment and that unlawfully circumvent the statutory and regulatory procedures applicable to Colorado workers' compensation insurance claims.

69.     If brought and prosecuted individually, the claims of each Class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

70.     Plaintiffs will fairly and adequately protect the interests of the members of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent.

71.     Plaintiffs have retained counsel competent and experienced in class action litigation and with adequate resources to prosecute this action.

72.     Plaintiffs intend to prosecute this action vigorously.

73.     Plaintiffs' counsel will fairly and adequately protect the interests of the members of the Class.

74.     Plaintiffs do not have any interests antagonistic to, or in conflict with, the other members of the Class.

75.     This action can be maintained under Federal Rules of Civil Procedure 23(b)(1), 23(b)(2) and/or 23(b)(3).

76.     This action can be maintained as a class action under Rule 23(b)(1) because all of the Rule 23(a) factors are met and because Plaintiffs and the Class members seek by this action

to alter the status quo with respect to the Defendants' unlawful and improper plan, pattern and practice of dictating the medical treatment of injured workers and/or of circumventing the applicable workers' compensation statutory and regulatory procedures, in violation of Colorado law.

77.     If each Class member filed a separate action, not only would the resources of the Court be wasted through the repetitive adjudication of the same facts and claims, but separate adjudications risk the establishment of incompatible standards governing Defendants' conduct with respect to the delivery of workers' compensation benefits to injured Wal-Mart employees.

78.     This action can be maintained as a class action under Rule 23(b)(2), because Plaintiffs and the Class members seek injunctive relief, and all of the above Rule 23(a) factors are present.

79.     Defendants have acted or refuse to act on grounds generally applicable to the Plaintiffs and the Class members, resulting in the improper dictation of medical treatment to the detriment of the Plaintiffs and the Class members and making injunctive or declaratory relief appropriate for the members of the Class.

80.     This action can also be maintained as a class action under Rule 23(b)(3) because all of the requirements of Rule 23(a) are met, questions of fact and law common to the Class predominate over the questions affecting only individual Class members, and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable.

81.     Furthermore, the damages suffered by each individual Class member may be disproportionate to the expense and burden of the individual prosecution of complex, extensive litigation necessary to proscribe Defendants' conduct and practices and to properly compensate Class members who have been victimized by such conduct.

82.     Additionally, effective redress for each and every Class member against Defendants may be limited or even impossible where serial, duplicate, or concurrent litigation occurs arising from these disputes.

83.     Even if individual Class members could afford or justify the prosecution of their separate claims, such an approach would create judicial inefficiencies, and could lead to incongruous and conflicting judgments against Defendants.  Thus, concentration of litigation of these claims in a single forum is appropriate.

84.     The size and make-up of the Class ensure there will be no difficulty in the management of this action as a class action.

85.     Moreover, Plaintiffs' counsel have experience litigating class action cases.

86.     For all other Class-related issues, this action can be administered under Rule 23(c)(4).

## **FIRST CLAIM FOR RELIEF**
(Class Claim for Bad Faith Breach of Insurance Contract Against all Defendants)

87.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 86 of this Complaint.

88.     Plaintiffs and the Class members are current or former employees of Wal-Mart and, therefore, insureds under Wal-Mart's workers' compensation insurance policy(ies).

89.     Upon information and belief, CMI acts as the claims adjuster for workers' compensation claims made by injured Wal-Mart employees.

90.     Upon information and belief, AHA is Wal-Mart's workers' compensation insurance carrier.

91.     Concentra and/or the Doe Defendants act as Wal-Mart's Corporate Medical Provider and/or ATP for treatment of injured Wal-Mart workers.

92.     Each Defendant has a special relationship with Plaintiffs and the Class members arising out of Defendants' relationships with Plaintiffs and the Class members and the statutory and regulatory benefits delivery process.  Therefore, each Defendant owes Plaintiffs and the Class members a duty of good faith and fair dealing.

93.     Defendants breached the duty of good faith and fair dealing they each owe to Plaintiffs and the Class members by improperly and unlawfully dictating the type and/or duration of medical treatment to be received by Plaintiffs and the Class members and by establishing policies, practices and procedures designed to withhold/delay/deny benefits and/or to unlawfully circumvent Colorado's regulatory and statutory workers' compensation procedures.

94.     Defendants' wrongful and unlawful actions include but are not limited to:

- requiring ATPs to obtain pre-authorization for referrals;

- directing adjusters to challenge the medical necessity of the referrals made by authorized treating physicians;

- withholding, delaying or and/or denying the authorization of referrals; and

- implementing and requiring the use of written medical directives (*e.g.*, the Flowsheets and Protocol Notes) to restrict the treatment options otherwise available to injured Wal-Mart employees pursuant to the Act.

95.     Defendants' conduct is contrary to Colorado common law, statutes, and regulations applicable to workers' compensation claims.

96.     Defendants' conduct is unreasonable and was committed with knowledge that such conduct was unreasonable and/or was committed with reckless disregard of the fact that such conduct was unreasonable.

97.     Defendants continue to willfully and intentionally engage in such conduct, despite the ruling of an administrative law judge (which was affirmed by the Industrial Claims Appeals Office on appeal) determining that Defendants' conduct is "objectively unreasonable" and in violation of the Act.

98.     As a direct and proximate result of Defendants' failure to act in good faith, Plaintiffs and the Class members have suffered and will continue to suffer actual and consequential damages, in amounts to be proven at trial.

**SECOND CLAIM FOR RELIEF**

(Class Claim for Aiding and Abetting Bad Faith Breach of Insurance Contract Against AHA,
CMI, the Doe Defendants, and Concentra)

99.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1
through 98 of this Complaint.

100.    AHA, CMI, the Doe Defendants, and/or Concentra aided Wal-Mart in the
development, implementation, and/or ongoing execution of unlawful, wrongful and/or improper
acts and/or omissions in connection with the delivery of workers' compensation benefits, causing
Plaintiffs and the Class members to suffer injury.

101.    Defendants AHA, CMI, the Doe Defendants, and/or Concentra were generally
aware of their respective roles in the unlawful, wrongful and improper conduct while developing,
implementing and/or carrying out such conduct.

102.    Defendants AHA, CMI, the Doe Defendants, and/or Concentra knowingly and
substantially assisted Wal-Mart in the development, implementation, and/or ongoing execution
of the written directives, including, without limitation, the Flowsheets and/or Protocol Notes,
which dictate, withhold, delay and/or deny medical treatment of injured Wal-Mart employees,
and/or which circumvent Colorado's statutory and regulatory workers' compensation procedures.

103.    As a result of the conduct of Defendants AHA, CMI, the Doe Defendants, and/or
Concentra, Plaintiffs and the Class members have suffered and will continue to suffer actual and
consequential damages, in amounts to be proven at trial.

**THIRD CLAIM FOR RELIEF**

(Class Claim for Civil Conspiracy to Commit Bad Faith Breach of Insurance Contract Against all Defendants)

104.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 103 of this Complaint.

105.    Upon information and belief, Wal-Mart, CMI, and/or AHA entered into illegal agreement(s) with Concentra and/or the Doe Defendants, whereby Concentra and/or the Doe Defendants agreed to restrict, withhold, delay and/or deny specific types and/or the duration of medical treatment provided to injured Wal-Mart employees, in exchange for Wal-Mart's, CMI's, and/or AHA's agreement to use Concentra and/or the Doe Defendants as their Corporate Medical Provider and/or ATPs for treatment of injured Wal-Mart employees.

106.    Wal-Mart, AHA, CMI, the Doe Defendants, and/or Concentra agreed by words and/or conduct to dictate medical treatment for injured Wal-Mart employees by:

- Directly interfering with the provision of medical treatment to injured Wal-Mart employees;

- Withholding, delaying, denying and/or restricting certain medical treatment for injured Wal-Mart employees;

- Developing and implementing procedures by which to delay, deny withhold and/or restrict certain medical treatments and/or to circumvent the statutory/regulatory procedures applicable to workers' compensation claims; and

- Establishing policies and procedures to unlawfully challenge the medical necessity of certain medical treatments, and to circumvent the statutory and regulatory procedures for such determination.

107.    Defendants' conduct violates Colorado law, as well as the duty of good faith and fair dealing Defendants owe to Plaintiffs and the Class members.

108.    With Wal-Mart's full knowledge and encouragement, AHA, CMI Concentra, and/or the Doe Defendants committed overt acts in order to implement Wal-Mart's plan to unlawfully and improperly dictate medical treatment to injured Wal-Mart employees.

109.    This agreed-upon course of action was unlawful, wrongful and/or improper because it violated Colorado law and breached the duty of good faith and fair dealing Defendants owe to Plaintiffs and the Class members.

110.    Defendants intentionally, unlawfully and improperly committed overt acts as part of this conspiracy by developing and implementing an unlawful and improper scheme to unlawfully dictate treatment of injured Wal-Mart workers and/or to withhold, delay, and/or deny treatment referrals made by ATPs.

111.    As a direct and proximate result of Defendants' participation in this conspiracy, Plaintiffs and the Class members have suffered and will continue to suffer actual and consequential damages in amounts to be proven at trial.

## **FOURTH CLAIM FOR RELIEF**

(Class Claim for Violations of the Colorado Consumer Protection Act Against
all Defendants)

112.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1
through 111 of this Complaint.

113.    At all times relevant to this action, Wal-Mart, AHA, and/or CMI provided
workers' compensation insurance coverage and benefits to Plaintiffs and the Class members,
which constitute more than 26,170 Colorado residents.

114.    In connection with providing workers' compensation insurance coverage and
benefits to Plaintiffs and the Class members, Defendants engaged in deceptive trade practices
within the meaning of C.R.S. § 6-1-105(1) (b), (c), (e), and (u) by:

- Knowingly and falsely representing to Plaintiffs and the Class members the source, sponsorship, and/or approval of their goods and/or services;

- Knowingly and falsely representing to Plaintiffs and the Class members their affiliation, connection, and/or association with one another;

- Knowingly and falsely representing to Plaintiffs and the Class members the characteristics, uses, and/or benefits of their respective goods and/or services;

- Knowingly and falsely representing the sponsorship, approval, status, affiliation, and/or connection of Defendants therewith; and

- Failing to disclose material information to Plaintiffs and the Class members.

115.   Upon information and belief, Defendants knowingly and falsely represented to Plaintiffs and the Class members that they would receive medical treatment for their compensable injuries in accordance with Colorado workers' compensation procedures, despite the fact that Defendants implemented policies, practices and procedures designed to dictate, delay, deny, withhold and/or restrict medical care and to circumvent Colorado workers' compensation procedures.

116.   The material information that should have been disclosed to Plaintiffs and the Class members included, but was not limited to:

- Information about Defendants' unlawful and improper pre-authorization requirements, including, without limitation, informing Plaintiffs and the Class Members that Wal-Mart, AHA, and/or CMI is/are without the legal right to require pre-authorization;

- Accurate and timely information regarding the reasons and parties responsible for imposing restrictions on treatment and/or delaying treatments and/or withholding benefits and/or denying specialist referrals;

- Information that Defendants' practices, policies, and procedures for determination of medical necessity of prescribed treatments are contrary to applicable regulatory and statutory procedures;

- Information concerning the artificial restrictions the Flowsheets, Protocol Notes and similar directives placed on medical treatment otherwise available to Plaintiffs and the Class members; and

- All treatment options available to the injured workers that, in the opinion of their respective ATPs, were reasonably needed to cure and relieve the injured employees from the effects of their injuries.

117. Defendants' failure to disclose such material information regarding the dictation of medical care was intended to improperly reduce the costs of treating employees injured on the job at the expense of the injured employee (such as Plaintiffs and the Class members).

118. Defendants' deceptive practices directly affect the public as actual or potential consumers of Defendants' services.

119. There is an enormous disparity in the relative sophistication and bargaining power between the individuals affected by Defendants' deceptive trade practices and Defendants.

120. Defendants' deceptive practices previously affected and continue to affect other workers' compensation claimants and have a significant potential to do so in the future.

121. Defendant Concentra further engaged in deceptive trade practices within the meaning of C.R.S. § 6-1-105(1) (b), (c), (e), and (u) by making and publishing false and misleading statements regarding the care of injured workers.

122. According to Concentra, Concentra's physicians and physical therapists treat more than 600,000 patients in more than 324 medical centers across the United States.

123.   Concentra falsely states and represents that "Concentra's focus on quality medicine and rapid treatment progression has proven to be highly effective in restoring health while reducing overall costs."

124.   Concentra also falsely states and represents that treatment at Concentra will have the following benefits:

- "Assurance of Care – You can be assured that, first and foremost, our patients receive quality medical care. Our focus on best practices to both treat injuries and return patients normal functioning assures this.

- Better Outcomes for All – Concentra's Dynamic Early Intervention Model approach – early mobilization, early use of physical and/or occupational therapy, and early return to work activity – produces better outcomes for the patient, the employer, and the payer alike."

125.   Concentra also falsely states and represents that injured workers who have an "injury [that] is especially complicated or severe" will receive a referral to a specialist:

- "When a Concentra-affiliated physician decides it's in the best interest of the patient to refer him or her to a specialist, the doctor explains to the patient the reasons and the type of specialist he or she will see.

- Quality medicine – This program combines the expertise of specialists with the proven care model of Concentra, so patients receive high-quality

medical care that continues to focus on their return to work and to normal activity."

126.    Concentra further falsely states and represents that "Our affiliated physicians and other professional staff understand the complexities of the state and federal rules that regulate the workforce."

127.    However, contrary to Concentra's representations, Concentra entered into agreements with the remaining Defendants and adopted Flowsheets, containing Protocol Notes that unlawfully and improperly dictate, delay, deny, withhold, and/or restrict the treatments available to injured Wal-Mart workers.

128.    Contrary to Concentra's representations concerning specialist care, the Flowsheets, Protocol Notes, and Defendants' policies and procedures directly interfere with the ATP's exercise of independent medical judgment and unlawfully require Concentra to obtain pre-authorization and/or to justify the medical necessity of any specialist referrals to CMI's adjuster.

129.    The Flowsheets and Protocol Notes effectively prevent injured workers from:

- Receiving quality medical care;

- Receiving certain therapies;

- Using Concentra's onsite pharmacy and/or the pharmacy of the injured worker's choice; and

- Receiving treatment quickly and efficiently in accordance with Colorado workers' compensation statutes, rules and applicable common law.

130.    In addition, the Protocol Notes directly conflict with Concentra's "philosophy" which allegedly "encourages modified duty," because the Protocol Notes require the physician to obtain permission from CMI's adjuster before the physician may prescribe modified work hours for an injured Wal-Mart worker.

131.    Thus, in addition to violating Colorado law, Defendants' policies, practices, and procedures directly conflict with Concentra's representations.

132.    Concentra knowingly, willfully, and intentionally made the foregoing representations, despite establishing practices, policies and procedures that directly conflict with its representations.

133.    In addition to providing such false and misleading information, Concentra also withheld material information from Plaintiffs and the Class members in connection with their medical treatment.   For example, Concentra should have disclosed accurate information to Plaintiffs, the Class members, and the general public concerning:

- Defendants' unlawful and improper pre-authorization requirements, including, without limitation, informing Plaintiffs and the Class Members that Wal-Mart, AHA, and CMI are without the legal right to require pre-authorization for specialist referrals;

- Accurate and timely information regarding the reasons and parties responsible for restrictions on treatment, the withholding of treatment and/or delays/denials of specialist referrals;

- Information that Defendants' practices, policies, and procedures for determination of medical necessity of prescribed treatments are contrary to applicable regulatory and statutory procedures;

- Information concerning Defendants' artificial restrictions on the injured workers' medical treatment or care, including information that benefits were withheld from the injured workers pursuant to the Flowsheets and/or Protocol Notes.

- All treatment options available to the injured workers that, in the opinion of their respective ATPs, were reasonably needed to cure and relieve the injured employees from the effects of their injuries.

134.    Concentra's deceptive practices directly affect the public as actual or potential consumers of Concentra's services.

135.    There is an enormous disparity in the relative sophistication and bargaining power between the individuals affected by Concentra's deceptive trade practices and Concentra.

136.    Concentra's deceptive practices previously affected and continue to affect all Colorado workers' compensation claimants and their employers, and these deceptive practices have a significant potential to do so in the future.

137.     As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class members have suffered and continue to suffer damages, in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**

(Class Claim for Civil Conspiracy to Violate the Colorado Consumer Protection Act Against all Defendants)

138.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 137 of this Complaint.

139.     Defendants, through their words and conduct, planned and conspired to implement an improper and/or unlawful plan to dictate the medical treatment of injured Wal-Mart employees, to delay, deny, restrict, and/or withhold benefits otherwise available to injured workers under the Act, and to circumvent applicable regulatory and statutory workers' compensation procedures.

140.     This agreed-upon course of action was unlawful and improper under the Act, the regulations promulgated by the Division of Workers' Compensation, Colorado common law, as well as provisions of the CCPA.

141.     Defendants intentionally, unlawfully and improperly committed overt acts as part of this conspiracy by:

- Denying, delaying, withholding and/or restricting certain medical treatments that are otherwise available to injured Wal-Mart employees under Colorado law;

- Implementing procedures by which to delay, deny, withhold and/or restrict certain medical care of injured workers in violation of Colorado law;

- Establishing procedures to challenge the medical necessity of prescribed medical treatments in contravention of the applicable workers' compensation regulatory and statutory procedures;

- Making false statements in an effort to conceal Defendants' unlawful and improper scheme to interfere with and/or to dictate the provision of medical treatment to injured Wal-Mart employees;

- Making false statements about and/or failing to disclose their status, affiliation, and/or connection with one another; and

- Failing to disclose to patients the fact that Wal-Mart, AHA, and/or CMI do not have the legal right to approve or deny any referrals made by an authorized treating physician and/or to determine the medical necessity of the referrals.

142.    As a direct and proximate result of Defendants' participation in this conspiracy, Plaintiffs and the Class members suffered actual and consequential damages, in amounts to be proven at trial.

**SIXTH CLAIM FOR RELIEF**

(Class Claim for Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.
§§1961-1968, against all Defendants)

143.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 142 of this Complaint.

144.    The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1961-1968, prohibits conduct involving a "pattern of racketeering activity."

145.    RICO provides for a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962". 11 U.S.C. §1964(c). "Racketeering activity" is defined in Section 1961(1)(B) to include various predicate acts indictable under provisions of the United States Code. Predicate acts that constitute racketeering activity include mail and wire fraud, indictable under 18 U.S.C. §§ 1341 and 1343 respectively. §1961(1)(B).

146.    RICO Section 1962(c) makes it unlawful for any person employed by or associated with an enterprise affecting interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering.

147.    Defendants are "persons" within the meaning of 18 U.S.C. §1961(3) and associated to form an "enterprise" within the meaning of §1961(4) for the purpose of making money by dictating, withholding, delaying and/or denying medical treatment to injured Wal-Mart workers. The enterprise is an association-in-fact comprised of Defendants.

148.     Beginning at some point prior to April 6, 2007 and continuing through the present, Defendants devised and executed a scheme to defraud Plaintiffs and in order to profit from dictating, withholding, delaying and/or denying medical treatment to injured Wal-Mart workers.

149.     Defendants have colluded to dictate, withhold, delay and/or deny medical treatment to injured Wal-Mart workers and to disseminate false and misleading information concerning medical treatment and/or workers' compensation benefits to the injured workers and the general public.

150.     The enterprise engaged in and its activities affected interstate commerce.  The enterprise violated the Act and used the United States mail and wires to transmit fraudulent information across state lines.

151.     Upon information and belief, the enterprise found its nucleus and decision-making center in Wal-Mart.

152.     Upon information and belief, Wal-Mart organized the enterprise and dictated the terms of the scheme designed to unlawfully dictate, withhold, delay and/or deny medical treatment to injured Wal-Mart employees.

153.     In order to bring Defendants' plan and scheme to fruition, Defendants conducted the enterprise's affairs through a "pattern of racketeering activity" within the meaning of §1961(5) and in violation of Section 1962(c).

154.     Defendants have executed this scheme and artifice with the intent to defraud Plaintiffs and the Class members through false pretenses, representations and promises and/or to permanently deprive Plaintiffs and the Class members of their right to receive medical treatment under the Act.  Defendants used the mails and/or wires to advance and execute this scheme.

155.     Defendants willfully and/or with actual knowledge of their illegal activities committed the following indictable predicate acts of mail and wire fraud, each of which constitute "racketeering activity", and all of which collectively demonstrate a "pattern of racketeering activity" for purposes of Section 1962:

    a.    Prior to April 6, 2007 Defendants established policies, practices and procedures including without limitation, the Flowsheets and the Protocol Notes, designed to unlawfully and improperly delay, deny, dictate, withhold and/or restrict the medical treatment of injured Wal-Mart employees.

    b.    Each time an injured Wal-Mart employee receives treatment from a physician employed by Concentra, such treatment occurs pursuant to the Flowsheets and Protocol Notes which are a part of Defendants' unlawful and improper scheme designed to delay, deny, dictate, withhold and/or restrict the medical treatment of injured Wal-Mart employees.

    c.    Upon information and belief, Wal-Mart and the Doe Defendants have implemented measures similar in substance to the Flowsheets and Protocol Notes which are used in the treatment of injured Wal-Mart employees and which are a

part of Defendants' unlawful and improper scheme designed to unlawfully delay, deny, dictate, withhold and/or restrict the medical treatment of injured Wal-Mart employees.

d.      Defendants conspired to cover up their unlawful and improper scheme by adopting policies and procedures for communications with injured Wal-Mart employees.    These communication policies and procedures involve the dissemination of false and misleading material information to these patients, and prevent the disclosure of accurate, timely and truthful material information to the injured Wal-Mart employees.

e.      Defendants have in the past made and presently continue to make further false and misleading representations to the public and to the injured workers regarding the treatment of injured workers.   Such representations are designed to further Defendants' unlawful and improper scheme while hiding it from the injured workers and the public.

f.      Defendants have in the past and presently continue to knowingly engage in conduct designed to obtain or exercise control over workers' compensation benefits belonging to Plaintiffs and the Class members and to conceal their entitlement to these benefits in such a manner as to permanently deprive Plaintiffs and the Class members of the use or benefit of these workers' compensation benefits to which they are entitled by law.

g.   On one or more occasions, including, without limitation, on April 20, 2007, pursuant to their scheme, Concentra contacted CMI via mail, telephone, facsimile, and/or electronic mail in order to obtain "pre-authorization" for a specialist referral, despite the fact that CMI was without the legal right to request any such pre-authorization.

h.   On one or more occasions, including, without limitation, on April 20, 2007, via mail, telephone, facsimile, and/or electronic mail, CMI's representative unlawfully refused to authorize a specialist referral made by an ATP.

i.   On one or more occasions, including, without limitation, on April 20, 2007, via telephone, Concentra made false and misleading representations to Mrs. Gianzero concerning a specialist referral made by her ATP.

j.   Defendants' ongoing scheme is designed to improperly reduce the costs of providing workers' compensation benefits at the expense of the injured Wal-Mart employees by permanently depriving the injured workers of medical treatment and/or benefits to which they are legally entitled under the Act.

156.   Further particulars regarding Defendants' false and misleading representations cannot be obtained without discovery.

157.   Defendants willfully and/or with actual knowledge of their illegal activities have formulated and embarked on an extensive plan of related acts in order to defraud Plaintiffs and

the Class members. Defendants' acts are related because the acts have the same results, participants, victims, and methods of commission.

158. Defendants' pattern of racketeering activity has been continuous over a period of more than two years with a clear threat of future racketeering activity that will continue to affect Plaintiffs and the Class members.

159. As a direct result of Defendants' conduct in violation of Section 1962(c), Plaintiffs and the Class members have suffered and will continue to suffer damages. In addition to an award of actual damages, Plaintiffs and the Class members are entitled to treble damages, costs, and reasonable attorney's fees pursuant to Section 1964(c).

### SEVENTH CLAIM FOR RELIEF
(Class Claim for Violation of 18 U.S.C. §1962(d) against all Defendants)

160. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 159 of this Complaint.

161. Defendants conspired amongst each other to violate 18 U.S.C. §1962(c). Defendants' conspiracy violated 18 U.S.C. §1962(d), which makes it unlawful for any person to conspire to violate §1962(a), (b), or (c).

162. Defendants associated to form an enterprise within the meaning of §1961(4) for the purpose of making money by dictating, withholding, delaying and/or denying medical treatment to injured Wal-Mart workers.

163.    As discussed in greater detail above, beginning prior to April 6, 2007 and continuing through the present, Defendants devised a scheme to defraud Plaintiff and the Class members by dictating, withholding, delaying, and/or denying medical treatment to injured Wal-Mart workers and by disseminating false and misleading information to the injured workers in connection with their workers' compensation benefits and/or medical treatment.

164.    Defendants have therefore planned and conspired, through their words and conduct to engage in a pattern of racketeering activity as described above and for Wal-Mart to conduct the affairs of the enterprise through this pattern of racketeering activity.

165.    Plaintiff and the Class members have been and continue to suffer injury to their property as a direct result of Defendants' conspiracy, entitling Plaintiff and the Class members to an award of treble damages, costs and reasonable attorney's fees pursuant to §1964(c).

### EIGHTH CLAIM FOR RELIEF
(Class Claim for Violation of Colorado Organized Crime Control Act, §18-17-101, *et seq.*, C.R.S., against all Defendants)

166.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 165 of this Complaint.

167.    The Colorado Organized Crime Control Act ("COCCA") §18-17-101, *et seq.*, prohibits conduct involving a "pattern of racketeering activity" and provides for civil remedies for persons injured by such activities.

168.    Racketeering activity is defined in §18-17-103(5), C.R.S. to include various predicate acts indictable under the United States Code and/or Colorado statutes.  Defendants'

predicate acts that constitute racketeering activity include mail and wire fraud, indictable under 18 U.S.C. §§1341 and 1343 respectively, as well as theft and computer crimes, indictable under §§18-4-401, C.R.S. and 18-5.5-102, C.R.S., respectively.

169.    COCCA section 18-17-104(3) makes it unlawful for any person employed by or associated with an enterprise to conduct the affairs of an enterprise through a pattern of racketeering.

170.    COCCA section 18-17-104(4) makes it unlawful for any person to conspire or endeavor to violate §18-17-104(3).

171.    Defendants are "person[s]" within the meaning of §18-17-103(4), and have associated to form an "enterprise" within the meaning of §18-17-103(2) for the purpose of profiting from a "scheme" consisting of the establishment of policies, practices, and procedures designed to unlawfully and improperly dictate, delay, deny, withhold and/or interfere with the medical treatment of injured Wal-Mart employees in the State of Colorado.

172.    In May 2007, Mrs. Gianzero's ATP gave a deposition in her workers' compensation administrative case.   At this deposition, Mrs. Gianzero, through counsel, discovered the existence of the Protocol Notes, which led to the discovery of Defendants' scheme designed to deprive all injured Wal-Mart employees of the medical treatment to which they are legally entitled.

173.    Defendants have conspired to, among other things, unlawfully and improperly dictate treatment of injured Wal-Mart employees, to withhold and/or permanently deprive

injured workers of medical treatment, and to evade the statutory and regulatory procedures applicable to determination of the medical necessity of certain treatments prescribed by the injured Wal-Mart employees' respective ATPs.

174.    In carrying out their scheme, Defendants have injured Plaintiffs, as well as all other similarly situated Wal-Mart employees.

175.    In order to bring Defendants' plan and scheme to fruition, Defendants conducted the enterprise's affairs through a pattern of racketeering activity in violation of §18-17-104.

176.    Defendants willfully and/or with actual knowledge of their illegal activities, have executed this scheme and artifice with the intent to defraud Plaintiffs and the Class members through false pretenses, representations, and promises and/or to permanently deprive Plaintiffs and the Class members of their right to receive the medical treatment to which they are entitled by the Act.  Defendants used the mails, wires and/or computers to advance and execute this scheme.

177.    Defendants committed the following indictable predicate acts of mail and/or wire fraud, computer crimes, and/or theft, each of which constitute "racketeering activity," and all of which collectively demonstrate a "pattern of racketeering activity" under COCCA:

        a.    Prior to April 6, 2007 Defendants established policies, practices and procedures including without limitation, the Flowsheets and the Protocol Notes, designed to unlawfully and improperly delay, deny, dictate, withhold and/or restrict the medical treatment of injured Wal-Mart employees.

43

b.  Each time an injured Wal-Mart employee receives treatment from a physician employed by Concentra, such treatment occurs pursuant to the Flowsheets and Protocol Notes which are a part of Defendants' unlawful and improper scheme designed to delay, deny, dictate, withhold and/or restrict the medical treatment of injured Wal-Mart employees.

c.  Upon information and belief, Wal-Mart and the Doe Defendants have implemented measures similar in substance to the Flowsheets and Protocol Notes which are used in the treatment of injured Wal-Mart employees and which are a part of Defendants' unlawful and improper scheme designed to unlawfully delay, deny, dictate, withhold and/or restrict the medical treatment of injured Wal-Mart employees.

d.  Defendants conspired to cover up their unlawful and improper scheme by adopting policies and procedures for communications with injured Wal-Mart employees.   These communication policies and procedures require the dissemination of false and misleading material information to these patients, and prevent the disclosure of accurate, timely and truthful material information to the injured Wal-Mart employees.

e.  Defendants have in the past made and presently continue to make further false and misleading representations to the public and to the injured workers regarding the treatment of injured workers.  Such representations are designed

to further Defendants' unlawful and improper scheme while hiding it from the injured workers and the public.

f.   Defendants have in the past and presently continue to knowingly engage in conduct designed to obtain or exercise control over workers' compensation benefits belonging to Plaintiffs and the Class members and to conceal their entitlement to these benefits in such a manner as to permanently deprive Plaintiffs and the Class members of the use or benefit of these workers' compensation benefits to which they are entitled by law.

g.   On one or more occasions, including, without limitation, on April 20, 2007, pursuant to their scheme, Concentra contacted CMI via mail, telephone, facsimile, and/or electronic mail in order to obtain "pre-authorization" for a specialist referral, despite the fact that CMI was without the legal right to request any such pre-authorization.

h.   On one or more occasions, including, without limitation, on April 20, 2007, via mail, telephone, facsimile, and/or electronic mail, CMI's representative unlawfully refused to authorize a specialist referral made by an ATP.

i.   On one or more occasions, including, without limitation, on April 20, 2007, via telephone, Concentra made false and misleading representations to Mrs. Gianzero concerning a specialist referral made by her ATP.

j.   On one or more occasions, including, without limitation, on April 20, 2007 Defendants' employees accessed a computer, computer network or computer system for the purposes of devising or executing their scheme.

k.   On one or more occasions, including, without limitation, on April 20, 2007 Defendants' employees accessed a computer in order to commit theft within the meaning of §18-4-401, C.R.S.

l.   Defendants' ongoing scheme is designed to improperly reduce the costs of providing workers' compensation benefits at the expense of the injured Wal-Mart employees by permanently depriving the injured workers of medical treatment and/or benefits to which they are legally entitled under the Act.

178.   Further particulars regarding Defendants' false and misleading representations cannot be obtained without discovery.

179.   As a direct result of Defendants' violations of COCCA, Plaintiffs and the Class members have been damaged and are, therefore, entitled to treble damages, costs, and reasonable attorney's fees pursuant to §18-17-106(7).

## NINTH CLAIM FOR RELIEF
(Class Claim for Permanent Injunction Against all Defendants)

180.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 179 of this Complaint.

181.    As fully described above, Defendants developed and implemented the improper and unlawful policies, practices, and procedures (such as the Flowsheets and the Protocol Notes), which are designed to delay, deny, dictate, withhold and/or restrict the medical treatment of injured Wal-Mart employees in violation of Colorado law, as well as in breach of the duty of good faith and fair dealing Defendants owe to Plaintiffs and the Class members.

182.    During communications with Concentra required by the Flowsheets and/or Protocol Notes, Wal-Mart, CMI, and/or AHA question or challenge the medical necessity of referrals made by ATPs.

183.    By engaging in such conduct, Defendants unlawfully and improperly attempt to circumvent the statutory and regulatory procedures for determining the medical necessity of particular treatments.

184.    Defendants refuse to comply with Colorado law and/or the duty of good faith and fair dealing they owe to Plaintiffs and the Class members.

185.    Defendants hold no legal or equitable right to continue to violate Colorado law and/or to breach the duty of good faith and fair dealing owed to Plaintiffs and the Class members.

186.    If not enjoined, Defendants will continue to violate Colorado law, Defendants will continue to breach the duty of good faith owed to Plaintiffs and the Class members, and Defendants will continue to cause harm to Plaintiffs and the Class members.

187.   RICO Section 1964(a) authorizes this Court to enjoin Defendants' conduct in violation of §1962 and to impose reasonable restrictions on Defendants' future conduct. 18 U.S.C. §1964(a).

188.   CCPA section 6-1-110 authorizes the court to enjoin Defendants from continuing, engaging in, or doing any act in furtherance of any trade practices which violate the CCPA.  §§6-1-110(1), 6-1-113(1), C.R.S.

189.   COCCA section 18-17-106 authorizes the court to, among other things, enjoin Defendants' conduct which is found to be in violation of COCCA section 18-17-104 and to impose reasonable restrictions on Defendants' future conduct.  §18-17-106, C.R.S.

190.   Therefore, Plaintiffs and the Class members seek a permanent injunction enjoining Defendants from:

a.   Improperly and unlawfully dictating the medical treatment of injured Wal-Mart employees;

b.   Improperly and unlawfully requiring pre-authorization for treatment referrals of injured Wal-Mart employees made by ATPs;

c.   Improperly and unlawfully delaying withholding and/or denying the authorization of treatment referrals made by ATPs;

d.   Improperly and unlawfully circumventing the statutory and regulatory procedures for determination of the medical necessity of treatments prescribed by ATPs;

e.      Failing to make proper disclosures of material information concerning the
Flowsheets, Protocol Notes and/or similar unlawful directives; and

f.      Publishing false and misleading information concerning the treatment of
injured Wal-Mart workers.

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated,
seeks the following relief:

a.      An Order certifying this action as a class action and certifying Plaintiffs as
class representatives under Rule 23 of the Federal Rules of Civil
Procedure;

b.      Judgment in favor of Plaintiffs and the Class members and against
Defendants awarding compensatory, consequential, and statutory damages
on the first through eighth claims for relief;

c.      Judgment in favor of Plaintiffs and the Class members and against
Defendants awarding treble damages, attorney's fees, and costs of
investigation and litigation reasonably incurred, pursuant to RICO section
1964(c) and/or COCCA section 18-17-106(7);

d.      Judgment in favor of Plaintiffs and the Class members and against
Defendants compensating Plaintiffs and the Class members for costs
incurred by Plaintiffs and the Class members as a result of Defendants'
interference with their medical treatment;

e.      Judgment in favor of Plaintiffs and the Class members and against Defendants awarding Plaintiffs and the Class members injunctive relief pursuant to the ninth claim for relief as follows:

1.      Permanently enjoining Defendants from unlawfully and improperly dictating the medical treatment of injured Wal-Mart employees;

2.      Permanently enjoining Defendants from requiring "pre authorization" for treatment referrals of injured Wal-Mart employees made by authorized treating physicians;

3.      Permanently enjoining Defendants from delaying or denying treatment referrals made by authorized treating physicians;

4.      Permanently enjoining Defendants from circumventing the statutory and regulatory procedures applicable to the determination of the medical necessity of treatments prescribed or referred by the injured workers' authorized treating physicians;

5.      Permanently enjoining Defendants from publishing false and misleading information concerning the treatment of injured workers; and

6.     Compelling Defendants to make full and complete

disclosures of material information to the injured workers

concerning the Flowsheets, Protocol Notes and/or other

directives applicable to the medical treatment of injured workers.

f.     Judgment in favor of Plaintiffs and the Class members and against

Defendants awarding pre and post judgment interest, attorneys' fees and

costs as allowed by law; and

g.     Such further relief as the Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated this 24th day of March, 2009.          KONCILJA & ASSOCIATES, P.C.


_s/ Frances A. Koncilja_
Frances A. Koncilja
W. Bradley Betterton-Fike
KONCILJA & ASSOCIATES, P.C.
800 - 18th Street, Suite 300
Denver, CO 80202
Telephone: (303) 675-0900
Facsimile: (303) 675-0401
Email: mail@koncilja.com

Steven U. Mullens, #5021
STEVEN U. MULLENS P.C.
105 E. Moreno Avenue
Colorado Springs, CO 80903
Telephone:  (719) 632-5001
Facsimile: (719) 473-2299
Email:  sumullens@aol.com

Solomon B. Cera
GOLD BENNETT CERA & SIDENER LLP

595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
Email:  scera@gbcslaw.com

ATTORNEYS FOR PLAINTIFFS,
JOSEPHINE GIANZERO AND
JENNIFER JENSEN

Plaintiffs' Addresses:

Josephine Gianzero
28 Frost Lane
Colorado Springs, CO 80916

Jennifer Jensen
9608 Elkhart Avenue
Lubbock, TX 79424