IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00656 REB BNB

JOSEPHINE GIANZERO and
JENNIFER JENSEN,
individually and on behalf of all
others similarly situated,

Plaintiffs,

v.

WAL-MART STORES, INC., a Delaware corporation;
CLAIMS MANAGEMENT, INC., an Arkansas corporation;
AMERICAN HOME ASSURANCE CO., a New York corporation;
CONCENTRA HEALTH SERVICES, INC., a Nevada corporation; and
JOHN DOES 1-10, whose true names are unknown,

Defendants.

## ORDER ESTABLISHING ESI AND PAPER DOCUMENT PRODUCTION PROTOCOL

WHEREAS, this action is before the United States District Court for the District of Colorado by the Plaintiffs Josephine Gianzero and Jennifer Jensen (collectively, "Plaintiffs") against Defendants Wal-Mart Stores, Inc., Claims Management, Inc., American Home Assurance Co., and John Does 1-10 (collectively, "Defendants");

WHEREAS, the parties were ordered by the Court to work together to develop a protocol for the disclosure of electronically stored information ("ESI") and to submit that protocol to the Court on or before July 10, 2009;

WHEREAS, the parties filed a joint motion on July 10, 2009, requesting a brief extension until July 15, 2009 to submit a protocol to the Court; and

Case 1:09-cv-00656-REB-BNB   Document 68-2   Filed 07/15/2009   USDC Colorado   Page 2 of 7

WHEREAS, based upon the information represented by the parties at the time of this Stipulation and Agreement ("Agreement") of the potentially relevant sources of ESI, and in reliance on that information, the parties have in good faith engaged in discussions regarding the production format of such ESI and the production of paper documents:

IT IS ORDERED:

~~NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND BETWEEN THE PARTIES, THROUGH THEIR RESPECTIVE COUNSEL, AS FOLLOWS:~~

This ~~Agreement~~ *Order* shall govern the production of all documents produced in this matter, including documents produced in response to the parties' Rule 26 disclosures and all discovery requests from the date of this Agreement forward.

I.  **PRODUCTION FORMAT:**

A.  **Attachments and Parent-Child Relationships.** Separate document(s) (the "child") attached to another document (the "parent") shall be produced contemporaneously and sequentially immediately after the parent document. Parent-child relationships (the association between an attachment and its parent document) shall be preserved. Documents embedded inside other documents (*e.g.*, a Word file embedded inside a PowerPoint file) shall be designated as "attachments" to the embedding (parent) file. In the preceding example, the Word document would be designated as an attachment (child) of the PowerPoint file (parent). Attachment Range Fields shall include begin/end bates range, as well as begin/end bates range for attachment.

B.  **Paper Documents.** Where practicable, documents that originally existed in paper form ("Paper Documents") will be produced in an electronic image form, as TIFF images. Paper Documents shall be produced as they are maintained in the ordinary

course of business, including all separations, attachments, and affixed notes as they existed in the original. In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.*, paper documents shall be logically unitized). The parties will make their best efforts to have their vendors unitize documents correctly and will address situations where there are improperly unitized documents.

    C.    **Production of Non-Database ESI:** The parties agree to produce non-database ESI as follows:

    1.    Non-database ESI will be produced in TIFF format. All TIFF formatted documents will be single page, black and white, Group 4 TIFF at 300 X 300 dpi resolution and 8 1/2 X 11 inch page size, except for documents requiring different resolution or page size. If an original document contains color, a party may request the document be re-produced in color and the producing party shall honor reasonable requests to either make the document available in color for inspection and copying or for production of a color image of the document.

    2.    A unitization file, in standard format (e.g., Opticon, Summation DII, or the like) showing the Starting Bates, Ending Bates, Begin Attach, End Attach, Confidentiality notation (if applicable), and the metadata fields identified in Paragraph 5 of this Section will accompany each TIFF image.

    3.    Each TIFF image of an electronic document will be created directly from the original electronic document.

    4.    Electronic documents attached to an e-mail shall be produced contemporaneously and sequentially immediately after the parent e-mail.

5.   The following metadata fields associated with each electronic document will be produced, to the extent they exist as electronic metadata associated with the original documents: author, attachments, bcc, cc, creation time, date sent, date last modified/last saved time, from, importance, native path name, PST file name, received time, recipients, sender email address, sender name, sent, sent on, subject, and title.

6.   The list contained in Paragraph 5 may be modified in the event that responsive non-database ESI based on systems other than Microsoft applications and containing different metadata fields is identified.

7.   In addition to the metadata described above, where alterations have been made by the parties to static images (e.g., comments added to Adobe PDF documents include notes, highlights, stamps, or any other markup), non-privileged metadata will be produced to the extent it exists.

8.   An extracted searchable full text file version will be produced for each electronic document. Each extracted full text version will be assigned a unique file name or identifier.

9.   The parties and their respective vendors shall work together regarding the specifics of the load file formatting for a commercially available document management or litigation support software.

10.   Subsequent to the production of the non-database ESI in TIFF format, a receiving party may request that the producing party provide additional metadata information not already provided in accordance with the list set forth in Paragraph C(5), or that the producing party produce certain imaged files in an alternative

format. Such requests shall be made according to the following protocol:

    a.    The receiving party shall provide a list of Bates numbers for the imaged documents covered by the request, as well as an explanation for why the additional metadata or the alternative format is being requested.

    b.    The producing party shall have ten (10) business days to agree to provide the requested additional metadata or make the documents available in alternative format, or object to the demand. If the producing party objects to the demand, the producing party will respond in writing, setting forth the basis for the objection.

    c.    If the parties are unable to agree regarding a request for production as contemplated by this Paragraph, the parties may submit the matter to the Court.

    11.    In the event that non-database ESI is produced in native format, such files will be assigned a unique file name or identifier and a hash value. The producing party shall provide a placeholder at the Bates number where the document was originally located. The producing party will use reasonable efforts to produce each such natively produced document using a file naming convention such that the document retains its original file name.

    **D.**    **Production of Database ESI**

    1.    The parties and their respective vendors shall work together regarding the specifics of the production format (i.e., query format) for database ESI.

**II.**    **DE-DUPLICATION**

    A.    If a document was prepared in several copies, or if additional copies were subsequently made, and any such copies were not identical or are no longer identical by

reason of subsequent notation or modification of any kind whatsoever, including, without limitation, handwritten notations on the front or back of the document, all such existing non-identical copies shall be produced. If a producing party chooses to de-duplicate documents, the producing party may only omit from the production documents that are 100% duplicates. The duplicate copies that are produced shall include all metadata required by this Agreement, including but not limited to the multiple custodians possessing duplicate copies.

      B.    Each party will disclose the methodology it used to de-duplicate (e.g., MD5 Hashing, SHA-1).

      C.    The parties will meet and confer in an attempt to reach agreement as to the type of de-duplication methodology to be used for the production. If the parties are unable to resolve any such de-duplication issues, the dispute will be referred to the Court for resolution.

## III.   INADVERTENT PRODUCTION

The parties are continuing their discussions regarding a protocol for produced documents that are subsequently alleged to be privileged. If an agreement cannot be reached, the parties may submit the matter to the Court.

## IV.   OBLIGATIONS OF THE PARTIES

Nothing in this Agreement shall be construed to change the parties' obligations or rights under the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

## V.   FAILURE TO ADHERE TO AGREEMENT

If any party fails to adhere to the provisions of this Agreement, that party shall remedy any such failure – as soon as practicable, and at that party's own expense.

## VI.   MODIFICATION OF AGREEMENT

The parties agree that this Agreement was entered into based upon the information available at the time that it was executed by the parties and may be subject to modification in the future. Any party may file a motion to seek individual relief from this Agreement, including for reasons of undue or excessive costs.

Dated August 19, 2009.

BY THE COURT:

*/s/ Boyd N. Boland*

BOYD N. BOLAND
United States Magistrate Judge