**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  1:09-cv-00656-REB-BNB

JOSEPHINE GIANZERO and
JENNIFER JENSEN,
individually and on behalf
of all others similarly situated,

Plaintiffs,

v.

WAL-MART STORES, INC., a Delaware corporation;
CLAIMS MANAGEMENT, INC., an Arkansas corporation;
AMERICAN HOME ASSURANCE CO., a New York corporation;
CONCENTRA HEALTH SERVICES, INC., a Nevada corporation; and
JOHN DOES 1-10, whose true names are unknown,

Defendants.

---

## SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

---

Defendants Wal-Mart Stores, Inc. ("Wal-Mart"), Claims Management, Inc. ("CMI"), American Home Assurance Co. ("AHAC"), and Concentra Health Services, Inc. ("Concentra") (together, "Defendants") respectfully submit this Surreply to address the specific issues raised for the first time in Plaintiffs' Reply and to respond to those new assertions of fact and legal authority which are either gross mischaracterizations or patently false. Nothing contained within Plaintiffs' Reply cures their initial failure to satisfy the prerequisites for class certification. In fact, the additional materials submitted with Plaintiffs' Reply only underscore the predominance of individualized issues and the superiority of an alternative forum in which to adjudicate Plaintiffs' claims.



EXHIBIT

A

The overarching theme pervading Plaintiffs' Reply Brief is that protocol notes as they appeared on administrative forms more than two years ago, without more, automatically justify class treatment under Rule 23.   Plaintiffs make this assertion despite the facts that: 1) there is no common evidence that protocol notes in existence two years ago were ever interpreted or applied as a universal restriction on medical care; 2) there is no common evidence that the protocol notes *currently* in existence unlawfully restrict medical care; and 3) an alternative forum superior to the class action mechanism exists to adjudicate any individual claim that medical care was in any manner restricted or inadequate for a particular claimant.   In their Reply, Plaintiffs attempt to sidestep these fundamental impediments to class certification by arguing that a showing of individual harm is unnecessary, and that the mere existence of protocol notes constitutes sufficient class-wide harm to justify certification.   No case law applying the mandatory prerequisites to Rule 23 certification supports this interpretation.   Rule 23 and fundamental notions of standing require more.

The new "evidence" contained within Plaintiffs' Reply is three-fold: 1) affidavits from a single Concentra physician, "Dr. Orgel," in which he claims to have felt "pressured" and "scrutinized" by his Concentra superiors[1]; 2) testimony from a North Carolina physician referencing North Carolina Workers' Compensation state laws; and 3) emails between Concentra and CMI referencing protocol notes.  Plaintiffs' Reply Brief also contains numerous misrepresentations of legal authority concerning the applicable

---

[1]   Because Dr. Orgel's affidavits contain materially false information, were obtained in violation of Colorado Rule of Professional Responsibility 4.2, disclose information protected by the attorney-client privilege, and contain medical information which appears to have been disclosed in violation of HIPAA, Dr. Orgel's affidavits are the subject of a separate Motion to Strike filed contemporaneously herewith. Out of an abundance of caution, Defendants address these affidavits in the context of this Surreply, but do not waive in any manner the relief requested in the contemporaneous Motion to Strike.

standards governing class certification under Rule 23.    Each of these issues is addressed in turn below.

## I.    ARGUMENT

### A.    The Three Affidavits Of Dr. Orgel Demonstrate The Impropriety Of Class Treatment

Exhibits 11, 12 and 13 to Plaintiffs' Reply consist of three separate affidavits of David Logan Orgel, M.D., a Concentra physician who claims that he felt "scrutinized" and "pressured" to change the treatment he advised for three Wal-Mart employees. The workers' compensation proceedings for each of the three individuals to whom Dr. Orgel refers were completed and closed more than two years ago.  All three claimants had full hearings in which their claims were considered by an Administrative Law Judge. A review of Plaintiffs' entire submission reveals no evidence that the three claimants to whom Dr. Orgel refers ever alleged any form of unlawful restriction on medical care or suffered any form of inadequate medical treatment.  In  sum:

1) In *none* of the underlying workers' compensation proceedings was there an allegation of unlawful dictation of medical care.

2) In *none* of the underlying workers' compensation proceedings was there an allegation that the existence of protocol notes in any manner impacted the medical care the claimants received.

3) In *none* of the underlying workers' compensation proceedings was there evidence to indicate that the medical care that the claimants did receive was inadequate.

Contrary to the interpretation urged by Plaintiffs, the process by which Medical Directors perform quality assurance reviews of the treatment decisions of physicians is both routine and expected.  Self-serving characterizations made by one individual after the fact attempting to assign an illicit motive to a standard quality assurance review process

that occurs across the spectrum of patients does nothing to demonstrate common proof of a class wide restriction on medical care.

In total, to support their assertion that protocol notes in existence two years ago created a class-wide restriction on medical care, Plaintiffs have now proffered the workers' compensation histories of five individuals -- the two named Plaintiffs and the three claimants treated by Dr. Orgel. Of those five individuals, the single "damage" purportedly sustained as a result of a protocol note is a thirty-four day period of time in 2007 during which Ms. Gianzero waited to be seen by a specialist.[2] It remains undisputed that 33 Concentra physicians who collectively treated thousands of Wal-Mart work-injured employees over a four-year period all attested to the fact that the existence of protocol notes in no manner impacted their independent medical judgment with respect to treatment. See Combined Opposition at 11-12. Compared against the claims of the two named plaintiffs and the three individuals about whom Dr. Orgel purportedly felt "pressured" more than two years ago, the requisite level of common proof is far from satisfied.

A determination of whether any putative class members suffered any injury at all as a result of a protocol note cannot be accomplished absent an individualized inquiry regarding each claimant's personal circumstances. In this respect, the individual treatment and experiences of the three individuals referenced by Dr. Orgel only underscore the superiority of the Workers' Compensation forum to redress any claims that may exist among putative class members.

---

[2]   There is no showing that any one of the remaining four individuals identified incurred any damage or any form of unauthorized restriction on medical care. In fact, the treatment received directly contradicts the interpretation of the protocol notes that Plaintiffs urge, as *at least one of the individuals referred to by Dr. Orgel received chiropractic treatment.*

4

**B.**     **The Deposition Testimony Of A Physician In North Carolina Is Irrelevant**

Plaintiffs submit portions of a deposition transcript of Dr. Clare J. Sanchez (Exhibit 14), a Concentra physician in **North Carolina**, stating that in her professional duties, the notes "give us direction in treating the person." What Plaintiffs omit is that North Carolina law governing Workers' Compensation claims is materially different from that of Colorado. Specifically, there is no provision similar to C.R.S. § 8-43-503(3), which prevents the dictation "to any physician the type or duration of treatment or degree of medical impairment," in the North Carolina's Workers' Compensation Act. In any event, the testimony of a physician working in North Carolina has no relevance to the issue of whether a class of **Colorado** employees is properly certified.

**C.**     **The E-Mail Transmissions Submitted With The Reply Do Not Cure The Deficiencies In Plaintiffs' Motion**

The newly submitted e-mail documentation likewise does nothing to advance Plaintiffs' certification bid. Plaintiffs first argue that the existence of the "Med-E Program," warrants class certification. According to Plaintiffs, the Med-E Program -- characterized as "another example of how the Defendants dictate treatment" (Reply at 11) -- prevents claimants from filling their prescriptions at pharmacies outside of Wal-Mart. There is no evidence to that effect. In fact, Plaintiffs' self-serving characterization of the protocol note on page 7 of their Reply is rank theory only and completely unsupported by any evidence. The Med-E Program is an electronic billing system to facilitate the filling of prescriptions by eliminating the need for the claimant to pay for the prescription from his or her own funds and thereafter seek reimbursement. Wal-Mart has since established electronic billing systems for pharmacies outside of Wal-Mart to facilitate the filling of prescriptions in the same manner. There is no evidence that any

Wal-Mart claimants were denied a prescription because they chose to fill a prescription at a non-Wal-Mart pharmacy, or that they were forced to use a Wal-Mart pharmacy and prevented form going to a pharmacy of their own choice.  The existence of the Med-E Program has no bearing on the propriety of class certification.

Likewise, the remaining documents attached to Plaintiffs' Reply Brief do not constitute common evidence of any unlawful restriction of medical treatment.  For example, Exhibits 1 through 10, 15 through 16, 21 through 25, and 27 relate to the protocol notes as they existed *before 2008*.  There is no indication that the notes were ever applied to universally impact the medical services available for work-injured employees, as evidenced by the types and numbers of treatments that were provided to Wal-Mart claimants at the time these notes were in place.[3]

The remaining e-mail transmissions merely center upon the decision to change the protocol notes in response to Judge Friend's order in August of 2007.  Plaintiffs attribute an illicit motive to these email exchanges and suggest that the communications constitute an admission that Defendants previously sought to dictate medical care.  The email communications do nothing of the sort.  Rather, these documents merely demonstrate a good faith effort to ensure that the protocols -- which were designed and applied to address the administrative payment and processing of claims -- could not be misinterpreted by anyone as an unlawful restriction on medical treatment.

### D.    The Legal Standards And Case Law Relied Upon Are Inaccurate

Plaintiffs' entire Reply Brief is premised on a mischaracterization and misinterpretation of the criteria governing class certification.  The most patent misrepresentations of law are addressed below:

---

[3]  *See* Defendants' Combined Opposition, 11-12.

1.    Plaintiffs Mischaracterize the Court's Role in Its Certification Analysis

Plaintiffs understandably urge the Court to ignore the content and merits of their claims in its Rule 23 analysis.  (*See* Reply at 15-18).  It is well established, however, that while class certification is not to be a ruling on the Plaintiffs' claims, the Court may -- and, indeed, should -- consider the "merits" of the claims asserted to determine if the elements of the claims can be established through common proof applicable to the class as a whole.  Thus, the merits are properly considered when intertwined with the "proper consideration of other issues germane to whether the case should be certified as a class action."  Vallario v. Vandehey, 554 F.3d 1259, 1266 (10th Cir. 2009) (citations omitted).  See also Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 676 (7th Cir. 2001) ("[A] judge should make whatever factual and legal inquiries are necessary under Rule 23" even if "the judge must make a preliminary inquiry into the merits.").  Plaintiffs' Reply confuses an unnecessary inquiry into the merits of a plaintiff's claims with the required rigorous analysis of whether such claims may be adjudicated through common, class-wide proof.

Along these lines, nowhere do Plaintiffs respond to Defendants' arguments regarding the predominance of individualized issues inherent to the elements of each of the causes of action alleged in the Complaint.  Indeed, Plaintiffs wholly ignore the elements of their causes of action.  This exercise is a critical aspect of the Court's analysis of the propriety of certifying a class under Rule 23.  As explained in *Charleswell v. Chase Manhattan Bank, N.A.,* 223 F.R.D. 371 (D.V.I. 2004):

> For the Court to determine whether the claims asserted by the putative class meet the requirements for class certification, it is necessary to first examine the underlying causes of action.  If proof of the essential elements of a cause of action requires individual treatment, then class

7

certification is unsuitable. It is plaintiffs' burden to establish that common or generalized proof will predominate at trial with respect to these essential elements.

*Id.* at 379 (internal citations and quotations omitted).[4] Plaintiffs' failure to address the elements of their causes of action is most likely based on their fusing of a merits inquiry and proper analysis of Rule 23 criteria. Nevertheless, it is a crucial element on which Plaintiffs bear the burden of proof, one which they have failed to satisfy.

2.    Plaintiffs Misconstrue the Relationship Between Mootness and Rule 23(b)(2).

Rule 23(b)(2) certification is inappropriate where, as here, there is no common evidence to demonstrate that the conduct as alleged continues to exist, such that the primary relief sought is monetary damages. *See* Combined Opposition at pp. 21-23. Plaintiffs rely on *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167 (2000), to argue that the absence of evidence that the conduct they complain of currently exists should not hinder class certification. *Friends of the Earth,* however, was not a class action and was not decided under Rule 23, but rather presented "an important question concerning the operation of the citizen-suit provision of the Clean Water Act" and addressed the mootness doctrine. *Id.* at 173. Specifically, *Friends of the Earth* determined whether Plaintiffs had Article III standing to seek

---

[4]   The fact that Rule 23 requires a Court to analyze the substantive claims and defenses of the parties, and the essential elements of those claims and defenses, to determine whether common proof exists, is well recognized throughout the Circuits. *See Clark v. State Farm Mut. Auto. Ins. Co.,* 245 F.R.D. 478, 481 (D.Colo. 2007). *See also Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 226 F.R.D. 456, 477 (S.D.N.Y. 2005) ("To apply the principles embodied in Rule 23 to the motion for class certification, it is necessary to define the elements of the causes of action on which the plaintiffs are proceeding."); *Lee v. American Airlines, Inc.,* 2002 WL 31230803, *1 (N.D.Tex. Sept. 30, 2002) ("It is necessary, however, that a plaintiff make a preliminary exploration of some of the elements contained in his causes of action so that the court can determine if the prerequisites of class certification are present."); *Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d 1228, 1234 (11th Cir. 2000) ("In order to determine whether common questions predominate, the Court is called upon to examine the causes of action asserted in the complaint on behalf of the putative class.") (internal citations and quotations omitted).

injunctive relief against the holder of a National Pollutant Discharge Elimination System permit for its past violation of mercury discharge limits.  The case did not hold that Rule 23(b)(2) certification is proper in the absence of class-wide evidence that the action sought to be enjoined currently exists.[5]

### 3.    Plaintiffs' Emphasis Throughout Their Reply Is Misplaced

In apparent acknowledgment of the lack of common proof by which their claims can be uniformly adjudicated, Plaintiffs premise their entire Reply upon an erroneous interpretation of class certification law.   Specifically, Plaintiffs argue that "factual differences among the individual class members" have no bearing upon the propriety of class certification, and that class members were harmed -- even if the medical treatments they received were superior -- by the mere "fact" that their treatment plans were "subjected to the Defendants' improper policies before even setting foot inside the doctor's office." (Reply at 4, 37-38).

Plaintiffs' argument that the mere existence of the protocol notes -- whether or not they were ever uniformly applied to dictate or restrict the treatment of individual class members -- satisfies the predominance prerequisite set forth in Rule 23(b)(3) flies in the face of well-established class certification precedent.  *See, e.g., Klay v. Humana, Inc.,* 382 F.3d 1241, 1264 (11th Cir. 2004) (finding that common issues did not

---

[5]   For this same reason, *Bighorn Forest Users Coalition, Inc. v. Thompson,* 170 F.Supp.2d 1091 (D.Colo. 2001) is inapposite, as it involves the same standing question and is inapposite to a Rule 23 analysis. The only other case cited by Plaintiffs in support of their argument was decided in the context of class certification, but is readily distinguishable.  *Mack v. Suffolk County,* 191 F.R.D. 16 (D.Mass. 2000) involved a challenge brought by a class of female pre-arraignment detainees against the county's policy of strip searches and visual body cavity searches of such detainees without individualized suspicion.  In holding that the county's voluntary cessation of these searches did not moot the controversy, the court relied on evidence that the county had continued with its strip search policy for 14 years after it had been declared illegal, and that "Defendant changed its policy to avoid liability in the case at bar rather than to comport with constitutional standards." *Id.* at 22.  Here, there is no such evidence and the protocol notes were no longer operative at least one and a half years before the institution of this lawsuit.

predominate where allegations of defendants' policy to underpay doctors did "nothing to establish that any individual doctor was underpaid on any particular occasion."); *Ramirez v. DeCoster,* 194 F.R.D. 348, 353 (D.Me. 2000) (holding that plaintiffs "do not necessarily satisfy the requirement that questions of law or fact predominate by alleging a pattern or practice claim."). Not only is this theory incongruous with Rule 23(b)(3) certification, but also the objective numbers regarding prescribed treatments themselves belie any notion of a "systemic," uniformly-applied policy. The lack of predominance in this action is especially pronounced when viewed through the lens of the causes of action alleged in Plaintiffs' Complaint. The Court's "rigorous analysis" cannot, as Plaintiffs urge, take place in a vacuum.

In further support of their class certification motion, Plaintiffs rely on cases that are mis-cited or clearly distinguishable. Most notably, Plaintiffs cite to *Forbush v. J.C. Penny Co.,* 994 F.2d 1101 (5th Cir. 1993), in support of their predominance argument. Nevertheless, the class of J.C. Penny employees at issue in *Forbush* -- who, unlike here, were all purportedly impacted by the existence of uniformly-applied, undisputed social security calculations -- was amenable to certification only under Rule 23(b)(2), and not Rule 23(b)(3).[6] In short, the claimed existence of a policy, with no evidence

---

[6] The inapplicability of *Forbush* is emphasized by *Romberio v. UnumProvident Corp.,* 2009 WL 87510, *7 (6th Cir. Jan. 12, 2009), where the Sixth Circuit decertified a class in a breach of fiduciary class action. The district court had erroneously relied on *Forbush* in certifying the class. In reversing the district court's order, the Sixth Circuit explained that:

[i]n *Forbush,* the plaintiff challenged a very specific practice uniformly applied to a discrete, easily-defined group of individuals. Indeed, every retiree in the class had his or her pension benefits calculated by using one of three mathematical formulae for estimating retirees' social security payments. If the mathematical formula was improper as used for one retiree, it was improper for every other retiree whose benefits were determined by application of that formula.

Unlike the plaintiff in *Forbush*, the Plaintiffs in this case challenge a group of loosely-defined practices that were *not* applied uniformly to a discrete, easily-identified class of individuals. (emphasis in original).

that it was ever uniformly applied -- or applied at all -- in the manner urged by Plaintiffs is not sufficient to satisfy the predominance criterion of Rule 23(b)(3). None of the cases cited by Plaintiffs holds otherwise.

## II.    CONCLUSION

For the foregoing reasons, Plaintiffs' additional submissions do nothing to cure the deficiencies in their opening brief seeking Class Certification. As set forth in Defendants' Combined Opposition, Plaintiffs' claims are not amenable to class treatment under any subset of Rule 23 and their Motion for Class Certification is properly denied.

Respectfully submitted this 16th day of October, 2009.

s/ Amy Cook-Olson

Amy Cook-Olson
MURPHY DECKER HENSEN & COOK-OLSON, P.C.
1510 West Canal Court Suite 1500
Littleton, Colorado 80120
Tel:    303.468.5981
Fax:   303.468.5981
Email: acookolson@murphy-deckerpc.com

**Attorneys for Defendant**
Concentra Health Services, Inc.

s/ Naomi G. Beer

Brian Duffy
Naomi Beer
Jeannette Brook
GREENBERG TRAURIG, LLP
The Tabor Center
1200 Seventeenth Street, Suite 2400
Denver, Colorado 80202
Tel:    303.572.6500
Fax:   303.572.6540
Email: duffyb@gtlaw.com
         beern@gtlaw.com
         brookj@gtlaw.com

**Attorneys for Defendants**
Wal-Mart Stores, Inc., Claims
Management, Inc., and American
Home Assurance Co.

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 16, 2009, a true and correct copy of the foregoing **SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following addresses:

Frances A. Koncilja, Esq.
Delphine Farr, Esq.
Koncilja & Associates, P.C.
800 18th Street, Suite 300
Denver, Colorado 80202
Email: fkoncilja@koncilja.com
      dfarr@koncilja.com
      mail@koncilja.com

**Attorneys for Plaintiffs**

Solomon Benjamin Cera, Esq.
Pamela Markert, Esq.
Wendy Giblin, Esq.
Gold, Bennett, Cera & Sidener, L.L.P.
595 Market Street, Suite 2300
San Francisco, California 94105
Email: scera@gbcslaw.com
      pmarkert@gbcslaw.com
      ggiblin@gbcslaw.com

**Attorneys for Plaintiffs**

Steven Ulysses Mullens, Esq.
Steven U. Mullens, P.C.
Post Office Box 2940
105 East Moreno Avenue
Colorado Springs, Colorado 80901-2940
Email: stevenumullens@sumullens.com

**Attorneys for Plaintiffs**

               *s/ Wendy Creason*
               Wendy Creason
               Legal Secretary