IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-00656-REB-BNB

JOSEPHINE GIANZERO, and
JENNIFER JENSEN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

WAL-MART STORES, INC., a Delaware corporation,
CLAIMS MANAGEMENT, INC., an Arkansas corporation,
AMERICAN HOME ASSURANCE CO., a New York corporation,
CONCENTRA HEALTH SERVICES, INC., a Nevada corporation, and
JOHN DOES 1-10, whose true names are unknown,

Defendants.
_____

**ORDER**
_____

This matter arises on **Defendant Wal-Mart Stores, Inc. and Claims Management Inc.'s Motion for Protective Order and/or to Quash** [Doc. # 254, filed 2/23/2011] (the "Motion for Protective Order"), which is DENIED.

In this action, the plaintiffs allege that Wal-Mart and its affiliate, Claims Management Inc. (collectively "defendants"), conspired with others to limit the medical services available to Wal-Mart's work-injured employees in Colorado. Motion for Protective Order [Doc. # 254] at p. 2. The claims at issue here are limited to injured Wal-Mart employees in Colorado. Id.

The plaintiffs served a subpoena on Deloitte & Touche LLP, accountants for Wal-Mart, which commands the production of the following materials:

> 1. All documents sent by you to Wal-Mart and/or received by you from Wal-Mart concerning Wal-Mart's obligation, potential obligation and/or calculation of payment for any Workers'

> Compensation Claim made by any of its employees in the State of Colorado as well as any obligation or possible obligation to pay for loss adjustment expenses.
>
> 2. All documents provided to you by Wal-Mart which you used to perform any actuarial analysis concerning Wal-Mart's obligation or potential obligation to pay for any Workers' Compensation Claim made by any of its employees in the State of Colorado, including loss triangles and/or loss adjustment expenses.
>
> 3. All documents provided by you to Wal-Mart regarding actuarial analysis performed concerning Wal-Mart's obligation or potential obligation to pay for any Workers' Compensation Claim made by any of its employees in the State of Colorado, including all forecasts, reserves, and/or loss adjustment expenses.
>
> 4. All documents concerning the actuarial analysis and actuarial techniques applied by you regarding Wal-Mart's obligation or potential obligation to pay for any Workers' Compensation Claim made by any of its employees in the State of Colorado as discussed in the attached transcript excerpts from the deposition of Michele Mackey taken on November 3, 2010. . . .
>
> 5. All documents concerning the actuarial techniques you create and/or use to prepare actuarial information, documents and data concerning Wal-Mart's obligation or potential obligation to pay for any Workers' Compensation Claim made by any of its employees in the State of Colorado and/or loss adjustment expenses.
>
> 6. All actuarial documents prepared by you concerning Wal-Mart's obligation or potential obligation to pay for any Workers' Compensation Claim made by any of its employees in the State of Colorado and/or loss adjustment expenses.
>
> 7. All actuarial documents provided to you concerning Wal-Mart's obligation or potential obligation to pay for any Workers' Compensation Claim made by any of its employees in the State of Colorado and/or loss adjustment expenses.

Subpoena [Doc. # 254-7] at Part IV.

In general, the defendants characterize the subpoenaed materials as constituting "reserves and loss adjustment expenses for Colorado Workers' Compensation claims." Motion for Protective Order [Doc. # 254] at p. 4. They seek a protective order preventing the discovery on three grounds. First, they argue that the materials responsive to the subpoena are not relevant to matters at issue in this case nor reasonably calculated to lead to the discovery of admissible evidence because the data is "solely aggregate nationwide data covering a minimum of forty-seven states from which Colorado-specific data cannot be segregated." Id. at p. 5.

Second, they contend that insurance reserve information is not "in any way related to the denial of particular medical treatments to Colorado work-injured employees." Transcript of Proceedings (3/18/2011) [Doc. # 266] (the "3/18/2011 Trans.") at p. 3 line 23 through p. 24 line 2. According to defendants, "[t]he allegation that Wal-Mart and CMI conspired with Concentra physicians to limit certain types of medical care to Colorado work-injured employees has absolutely nothing to do with Wal-Mart's statutory duty to set aside sufficient funds to cover potential future expenses, losses, or claims." Motion for Protective Order [Doc. # 254] at p. 12.

Third, the defendants assert that the responsive information is "highly sensitive commercial information confidential to Wal-Mart." Id. at p. 4 lines 3-5. Although there is a blanket protective order in place limiting the disclosure of confidential information to specific people or categories of people for use only in connection with the preparation of this case for trial, Protective Order [Doc. # 63], the defendants contend that the protective order "doesn't serve to extend the scope of permissible discovery under Rule 26, and Rule 26(c) is the appropriate means by which to establish limits on discovery for good cause as justice requires." 3/18/2011 Trans. [Doc. # 266] at p. 4 lines 11-19.

Dealing with the last argument first, I am not convinced that the information responsive to the subpoena is especially sensitive. According to the defendants, it includes:

> [D]etailed payroll data, what we pay our employees, the number of claims by month over time, the number we have projected for losses, the amounts reserved for future claims, the expenses to adjust those claims. That type of data, Your Honor, if in the hands of a competitor, another retailer, is--if we could hand Target exactly what we pay our employees and the number of employees and what we project on future losses, certainly that would be valuable to them.

Id. at p. 17 lines 16-25.

There is no evidence that Wal-Mart's pay scale is a secret, and I do not believe that it is. Thousands of former employees know how much they earned while employed, and I am not aware of any reason they cannot and have not disclosed that information. The value to Target or any other retailer of information concerning the number of Wal-Mart's claims by month over time, the number of claims projected for losses, the amounts reserved for future claims, and the expenses to adjust those claims is not apparent to me, and no evidence in that regard is offered. Given the nature of the confidential information at stake, I am convinced that the blanket protective order in place offers sufficient protection from improper disclosure or use. Although I agree that the existence of the protective order does not expand permissible discovery, it does adequately address the confidential nature of the information.

I find that the materials responsive to the subpoena are relevant to the parties' claims and defenses or are reasonably calculated to lead to the discovery of admissible evidence. First, although the defendants argue that only aggregated information is available from Deloitte & Touche which combines data from 47 states and from which the Colorado data cannot be segregated, there is no evidence establishing that fact. Even if only aggregated information is

4

available, the plaintiffs have persuasively articulated reasons why aggregated information is relevant to issues of both liability and damages:

> It goes to liability, as well as to the damages model.  Mr. Walling [plaintiff's expert], whose declaration is attached to our pleadings, prepared our expert report, and in our calculation of our damages he used industry-wide bench marks to calculate what he thought the payments could have been under various assumptions, should have been under certain assumptions.  So the aggregate information as to what is going on with Wal-Mart in states that they do not dictate medical care is relevant to give us a benchmark to then compare the Colorado data.
>
> \* \* \*
>
> We think that what has happened at the Wal-Mart/Concentra level, as well as with other authorized medical providers, is that in this state, as sort of a model--maybe other states, I don't know that for sure--they developed a plan to undertreat the injured workers, keep them working with little or no medical treatment, with the result that they're terminated within about 90 days, pursuant to this Temporary Alternative Duty program that they've come up with, and get them out the door because they're fungible.  And then you just start over with the next group again.
>
> So the dictation of medical care, in our opinion, Your Honor, gives them the ability to have reserves that are too low when you compare them to the industry benchmarks, and that is something that Wal-Mart then touts in its public statements about how much it can save by reducing its reserves.
>
> \* \* \*
>
> Our actuary, we believe, can take the Colorado-specific model that we're developing and compare it to the aggregate, and establish by that what I would call the delta, the difference, that shows the effect of interfering with--undertreating workers and getting them out the door.  Because you're comparing one subset with a certain criteria to a bigger group that does have those criteria in it, and this is what actuaries do all the time.

Id. at p. 20 lines 11-20; p. 23 line 19 through p. 24 line 10; p. 27 line 25 through p. 26 line 7.

5

Under Rule 26(c), Fed. R. Civ. P., a court "for good cause shown" may issue a protective order preventing discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." See Landco Equity partners, LLC v. City of Colorado Springs, 259 F.R.D. 510, 512 (D. Colo. 2009). The entry of a protective order is left to the sound discretion of the district court. Id. "As a general rule, the 'good cause' calculation requires that the Court balance the moving party's need for information against the injury which might result from . . . disclosure." Id. (internal quotations and citations omitted).

On balance, I find that the plaintiffs' need for the information outweighs any injury to the defendants in disclosing that information, subject to the blanket protective order that is in place.

IT IS ORDERED:

1.      The Motion for Protective Order [Doc. # 254] is DENIED; and

2.      Deloitte & Touche LLP shall comply with the subpoena and produce all responsive documents at a date and time as may be agreed, but not later than **April 26, 2011**.

Dated April 15, 2011.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge