IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-00656-REB-BNB

JOSEPHINE GIANZERO, and
JENNIFER JENSEN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

WAL-MART STORES, INC., a Delaware corporation,
CLAIMS MANAGEMENT, INC., an Arkansas corporation,
AMERICAN HOME ASSURANCE CO., a New York corporation,
CONCENTRA HEALTH SERVICES, INC., a Nevada corporation, and
JOHN DOES 1-10, whose true names are unknown,

Defendants.
_____

**ORDER**
_____

This matter arises on **Defendant Concentra Health Services, Inc.'s Motion for Protective Order** [Doc. # 272, filed 4/13/2011] (the "Motion for Protective Order"), which is DENIED.

I.

In this class action, the plaintiffs allege that Wal-Mart conspired with health care providers, including Concentra, through the use of "protocols," to withhold, delay, deny, and dictate the medical treatment provided to Wal-Mart employees in connection with workers' compensation claims. Scheduling Order [Doc. # 49, filed 6/25/2009] at p. 3. The plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and a number of state law claims. Subject matter jurisdiction is asserted based on a federal question and diversity of citizenship. Complaint [Doc. # 1, filed 3/24/2009] at

¶20.

  Defendant Concentra "is a health care company offering comprehensive services in Colorado including occupational medicine, urgent care, physical therapy and wellness services, through its affiliated physicians and health care providers." Scheduling Order [Doc. # 49] at p. 7.

  In plaintiffs' first set of written discovery served on August 11, 2009, they requested identification of the "[p]ersons employed by or affiliated with Concentra who provided treatment to work-injured Wal-Mart employees." Plaintiffs' First Set of Interrogatories [Doc. # 272-2] at p. 13. Concentra provided a supplemental response on February 12, 2010, in which it identified staff medical providers and asserted the following objection:

> Concentra does not consent to ex-parte contacts by Counsel for the Plaintiffs or their agents to contact any Concentra Medical Staff member, former or current, and Moves for Protective Order to prohibit Plaintiffs from contacting, ex-parte, Concentra's former and current medical staff members.

Concentra's First Supplemental Responses [Doc. # 272-3] at pp.2-3.

  No motion for protective order was filed in 2010 addressing this issue. However, in a letter dated March 29, 2011, plaintiffs' counsel inquired:

> I write requesting that Concentra withdraw its objection for Plaintiffs, as part of our ongoing investigation of the claims in this case, meeting with former employees of Concentra.
> \* \* \*
> We understand that you may want to raise this issue with the Court. Thus, we are providing notice to you that on April 4, 2011 we will contact former employees of Concentra. If you believe that the Rules and case law that you have previously cited prevents these contacts, please raise the issue with the Magistrate [Judge] so we have court guidance on this matter.

Letter [Doc. # 272-1] at p. 1. The Motion for Protective Order followed on April 13, 2011.

Concentra seeks a protective order precluding plaintiffs' counsel "from initiating contact with an unknown number of unidentified treating physicians or other former Concentra employees in possession of privileged or confidential information." Motion for Protective Order [Doc. # 272] at p. 1. Instead, Concentra proposes "to make former treating physicians available for informal interviews with Plaintiffs," provided plaintiffs notify Concentra of the names of the people to be contacted and, potentially, provided Concentra's counsel is allowed to attend the interviews. Id. at p. 2, citing Samms v. District Court, 908 P.2d 520 (Colo. 1995).

II.

Concentra first opposes ex-parte contact with former Concentra employees arguing that "[t]here is no question that the personnel in question have confidential information, and that there is a high likelihood that such information will be disclosed." Id. at p. 10. I understand the concern raised here to involve the potential disclosure of privileged attorney-client communications. Concentra's counsel admits that not all of Concentra's former employees have been exposed to privileged attorney-client communications. At argument on the Motion for Protective Order, Concentra's counsel conceded that only approximately ten Concentra employees or former employees have had confidential communications with Concentra's counsel.[1] I reject Concentra's assertion that it would be unreasonably burdensome for Concentra to contact these ten people and remind them of their obligations to maintain the confidentiality of any attorney-client communications.

As is applicable here, the District of Colorado has taken as its own the Colorado Rules of

---

[1] In her declaration, Ms. Cook-Olson stated that she has had attorney-client privileged communications with "several Concentra employees who are no longer employed with Concentra." Declaration of Amy Cook-Olson, Esq. [Doc. # 272-4] at ¶2.

3

Professional Conduct adopted by the Colorado Supreme Court on April 12, 2007.

D.C.COLO.LCivR 83.4. Rule 4.2 of the Colorado Rules of Professional Conduct ("Colo. RPC") provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or by a court order.

Concentra is an organization, not an individual. Comment [7] to Colo. RPC 4.2 addresses this issue and provides:

> In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. **Consent of the organization's lawyer is not required for communication with a former constituent**. . . . In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization.

(Emphasis added.)

Moreover, plaintiffs' counsel attached to the Memorandum in Opposition [Doc. # 290] (the "Response") a copy of Colorado Ethics Opinion 69, which deals with the Propriety of Communicating With Employee or Former Employee of an Adverse Party Organization [Doc. # 290-2], and provides in relevant part:

> Furthermore, whenever an attorney is going to communicate with a constituent who is not represented by counsel, he or she should identify himself or herself and the client. The lawyer also should refrain from stating that he or she is disinterested. When the lawyer knows or reasonably should know that the constituent

4

> misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.
>
> \* \* \*
>
> Comment [7] provides explicitly that "[c]onsent of the organization's lawyer is not required for communication with a former constituent." However, . . . Colo. RPC 4.2 is designed in part to preserve the confidentiality of privileged attorney-client communications. Accordingly, the inquiring attorney may not, while communicating with the organization's former constituent, inquire into privileged attorney-client communications; nor may the inquiring attorney listen while the former constituent attempts to divulge privileged communications voluntarily. The organization's privilege belongs to the organization, not the constituent, and can be waived only by the organization.

Finally, plaintiffs' counsel state clearly in the Response that "[c]ounsel understands that in pursuing their investigatory efforts that they cannot inquire into attorney-client communications or confidential patient names and treatments." Response [Doc. # 290] at p. 5.

It is apparent that plaintiffs' counsel is fully aware of its ethical obligations in connection with ex-parte communications with Concentra's former employees. I will not presume that counsel will violate those obligations.

Concentra has cited cases from other jurisdictions for a contrary rule. For example, Concentra relies on Kaiser v. AT&T, 2002 WL 1362054 \*6 (D. Ariz. April 5, 2002), to argue that "[i]f a former employee occupied a high ranking position such that his or her exposure to confidential or privileged information may be assumed, or occupied a position giving rise to a plaintiff's claims, then no *ex parte* contact should be permitted absent notice to the former employee." The Kaiser opinion, although consistent with Arizona cases construing Arizona's analogous rule, is not consistent with Colo. RPC 4.2 Comment [7] or with Colorado Ethics

Opinion 69.[2]

Concentra also cites <u>Camden v. State of Maryland</u>, 910 F. Supp. 1115, 1122 (D. Md. 1996), for the proposition that "a no-contact rule should apply to former employees with extensive exposure to confidential information." Motion for Protective Order [Doc. # 272] at p. 10. The Maryland version of Rule 4.2 apparently does not include a comment similar to Colorado's Comment [7], and the Maryland federal court was free to fashion its decision based on other authority it found persuasive.

Under the plain meaning of Colo. RPC 4.2 Comment [7], however, plaintiffs' counsel may contact former employees of Concentra without the consent of Concentra's counsel. Nothing in the Colorado rule requires that plaintiffs' counsel identify the former employees it intends to contact, and nothing about the contact proposed here persuades me that I should create such a requirement. Plaintiffs' counsel, of course, is bound by the Colorado Rules of Professional Conduct, including the limitations identified in Colo. RPC 4.3 and Colorado Ethics Opinion 69, in connection with its contacts with former Concentra employees.

### III.

Concentra also argues that ex parte contact by plaintiffs' counsel with former Concentra employees may violate the Colorado physician-patient privilege. <u>See</u> Motion for Protective Order at p. 9 (stating that "[u]nder Rule 501, the Court, sitting in diversity, applies state privilege

---

[2] Colorado Ethics Opinion 69 flatly rejects the approach taken in <u>Kaiser</u> and the supporting Arizona cases, which look to the role of the former employee when employed by the represented organization. As Ethics Opinion 69 makes clear, under the Colorado rule "[t]he need to inquire into the responsibilities and authority of a constituent does not apply to an organization's former constituents. Comment [7] provides explicitly that '[c]onsent of the organization's lawyer is not required for communication with a former constituent.'"

law"); p. 7 (arguing that "inquiry related to the protocol notes involves patient care and thus implicates patient confidentiality"); and p. 11 (arguing that "[a] patient's medical information is confidential and cannot be divulged without his or her consent," citing the Colorado state physician-patient privilege). The argument is unfounded.

Where, as here, there is a claim of privilege, I must determine whether federal of state law governs the existence and scope of the claimed privilege. Atteberry v. Longmont United Hospital, 221 F.R.D. 644, 646 (D. Colo. 2004); Everitt v. Brezzel, 750 F. Supp. 1063, 1066 (D. Colo. 1990). In this case, federal law provides the rule of decision with regard to the RICO claim. Consequently, the federal law of privilege governs even where the evidence sought also may be relevant to pendent state law claims. Atteberry, 221 F.R.D. at 646-47; Fed. R. Evid. 501 committee note. As the Eleventh Circuit Court of Appeals explained in Hancock v. Hobbs, 967 F.2d 462, 466-67 (11th Cir. 1992):

> Rule 501 is not clear as to which rule of decision should be followed when the federal and state laws of privilege are in conflict. Courts that have confronted this issue in the context of the discoverability of evidence have uniformly held that the federal law of privilege governs even where the evidence sought might be relevant to a pendent state claim. . . . We therefore hold that the federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is relevant to a pendent state law count which may be controlled by a contrary state law of privilege.

Neither the Supreme Court nor the Tenth Circuit Court of Appeals has recognized a physician-patient privilege under federal common law. Whalen v. Roe, 429 U.S. 589, 602 n.28 (1977)(stating that the "physician-patient privilege is unknown to the common law"); see Kubie v. Target Corp., 2009 WL 5216943 *3 (D. Colo. Dec. 30, 2009)(noting that "[n]either the

Supreme Court nor the Tenth Circuit has recognized a physician-patient privilege"); Morris v. Colorado Springs, 2009 WL 4927618 *1 (D. Colo. Dec. 18, 2009)(same); Hixson v. United States, 2009 WL 2358923 *2 (D. Colo. July 30, 2009)(same); and Fox v. The Gates Corp., 179 F.R.D. 303 305 (D. Colo. 1998)(same).  Nor does the Health Insurance Portability and Accountability Act ("HIPPA"), 42 U.S.C. § 1320D, et seq., create a federal physician-patient privilege.  United States v. Bek, 493 F.3d 790, 801-802 (7th Cir. 2007); Morris, 2009 WL 4927618 *1.[3]

Because the Colorado physician-client privilege does not apply in this federal question case, my inquiry regarding the discoverability of medical evidence and records "is governed by relevancy standards contained in Fed. R. Civ. P. 26 and considerations of confidentiality." LeFave v. Symbios, Inc., 2000 WL 1644154 *2 (D. Colo. April 14, 2000).  Whether former health care providers were limited by the protocols when treating Wal-Mart's employees for work related injuries is relevant to the plaintiffs' claims and is discoverable.  The Amended Protective Order [Doc. # 251], already in place, adequately addresses any issues of patient confidentiality.

IV.

Finally, Concentra expresses a concern that interviews by plaintiffs' counsel may result in Concentra's former employees revealing "information covered by nondisclosure agreements between Concentra and its former employees."  Motion for Protective Order [Doc. # 272] at pp. 4, 7-8.  Concentra's former employees must abide by their contractual obligations, and I assume

---

[3]Concentra's passing reference that the proposed interviews "potentially implicat[e] the self-analysis privilege," Motion for Protective Order [Doc. # 272] at p. 7, is too fleeting and undeveloped to support the relief sought.

8

they will do so in their everyday conversations with third parties as well as when talking to plaintiffs' counsel in the requested interviews. In this regard, however, I agree with the plaintiffs that "[a] protocol to violate the law is not a trade secret" entitled to protection, Response [Doc. # 290] at p. 9, and Concentra may not hide behind nondisclosure agreements to prevent its former employees from disclosing the protocols and how they were used and implemented. To the extent any of Concentra's confidential information entitled to protection pursuant to a nondisclosure agreement is improperly or inadvertently revealed to plaintiffs' counsel, it may be designated as confidential under the Amended Protective Order to prevent unnecessary and harmful dissemination.

V.

Concentra has failed to establish good cause justifying the protective order sought. See Fed. R. Civ. P. 26(c)(1). Accordingly,

IT IS ORDERED that the Motion for Protective Order [Doc. # 272] is DENIED.

Dated May 5, 2011.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge