**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 09-cv-00656-REB-BNB

JOSEPHINE GIANZERO, and
JENNIFER JENSEN, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

WAL-MART STORES, INC., a Delaware corporation,
CLAIMS MANAGEMENT, INC., an Arkansas corporation,
AMERICAN HOME ASSURANCE CO., a New York corporation,
CONCENTRA HEALTH SERVICES, INC., a Nevada corporation,
and JOHN DOES 1-10, whose true names are unknown,

    Defendants.

**ORDER DENYING PLAINTIFFS' MOTION FOR
ISSUANCE OF CONTEMPT CITATION**

**Blackburn, J.**

This matter is before me on the **Plaintiffs' Verified Motion for Issuance of Contempt Citation Against Lexington Insurance Company and its Agent Mark Kanady and to Enforce Settlement Agreement and Order Payment of the Amount of $3,964,489.30 from Lexington Insurance Company And/or Defendant Concentra Health Services, Inc.** [#496][1] filed June 8, 2012. The plaintiffs filed a supplement [#498] to their motion, Lexington insurance Company filed a response [#500], and the plaintiffs filed a reply [#506]. I deny the motion.

---

[1] "[#496]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## I. STANDARD OF REVIEW

A district court has the inherent power to enforce its orders through civil contempt.[2] ***Shillitani v. United States***, 384 U.S. 364, 370 (1966). A finding of civil contempt is proper when (1) a valid court order existed; (2) the subject of the order had knowledge of the order; and (3) the subject of the order disobeyed the order. ***FTC v. Kuykendall***, 371 F.3d 745, 756-57 (10th Cir. 2004) (citing ***Reliance Ins. Co. v. Mast Constr. Co.***, 159 F.3d 1311, 1315 (10th Cir. 1998)). *See also* 18 U.S.C. § 401(3).

There are two types of sanctions for civil contempt: coercive sanctions and compensatory sanctions. Coercive sanctions "look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order." ***Latrobe Steel Co. v. United Steelworkers***, 545 F.2d 1336, 1344 (3rd Cir. 1976). Compensatory sanctions seek to "compensate the complainant through the payment of money for damages caused by past acts of disobedience." ***Id.; see also United States v. United Mine Workers of Amer.***, 330 U.S. 258, 303-04 (1947); ***South Suburban Org. for Women v. Terry***, 886 F.2d 1339, 1351 (2nd Cir. 1989). A coercive sanction should be designed to bring about the desired result and to reflect the character and magnitude of harm if the desired result is not achieved. ***O'Connor v. Midwest Pipe Fabricators, Inc.***, 972 F.2d 1204, 1211 (10th Cir. 1992); ***see also United Mine Workers***, 330 U.S. at 304.

---

[2] Contempt proceedings are either civil or criminal in nature. Consistent with the objectives underlying civil and criminal contempts, if the sentence imposed is conditional and grants the defendant the ability to end the penalty by complying with the order, the contempt is civil. ***Colombo v. New York***, 405 U.S. 9, 10-11 (1972); ***Shillitani v. United States***, 384 U.S. 364, 369-70 (1966); ***Cheff v. Schnackenberg***, 384 U.S. 373, 377 (1966). If the penalty is fixed and there is no possibility of complying with the court order, the contempt is criminal. ***Shillitani***, 384 U.S. at 369-70.

## II.  FACTS

On the current record, I conclude that the facts summarized below are not disputed.  This case was a class action in which the plaintiffs asserted claims related to the provision of workers compensation medical treatment by the defendants. Ultimately, the parties agreed to a settlement in November 2011.

Lexington Insurance Company is an insurer of defendant Concentra Health Services, Inc.  Mark Kanady, an employee of Lexington, was involved in the negotiation of the settlement agreement with regard to Concentra.

Paragraph 5.1.2 of the Settlement Agreement [#468-1] provides:

> Lexington on behalf of Concentra shall pay an aggregate amount of Four Million Dollars ($4,000,000) which shall be the amount that either Lexington or Concentra shall be obligated to pay in connection with this Settlement.

*Settlement Agreement* [#468-1], ¶ 5.1.2.  Paragraph 11.1.2 provides:

> No later than Thirty (30) calendar days following the Settlement Effective Date, Wal-Mart and CMI on the one hand and Lexington on behalf of Concentra on the other hand shall each transfer to the Escrow Account the balance of their respective shares of the Class Settlement Amount . . .

*Settlement Agreement* [#468-1], ¶ 11.1.2.  After the court approved the settlement, May 26, 2012, became the final deadline for payment of these funds by Lexington.  Good funds were not received in the escrow account established to facilitate the settlement until June 14, 2012.  Based on this 19 day delay, the plaintiffs ask the court to issue a contempt citation to Lexington and Mark Kanady and, ultimately, to hold Lexington and Mr. Kanady in contempt of court.

In its response [#500], Lexington says it was not aware of the settlement or its obligation to pay these funds until June 6, 2012.  At that point Lexington undertook an investigation of the situation and within eight days paid the amount due to the escrow

account. The affidavit of Eugene B. Isotti [#500-1], a Lexington employee, outlines the relevant facts. Mr. Isotti is the Regional Assistant Vic President of Healthcare Medical Malpractice Claims (Healthcare Claims) for Lexington's parent company, Chartis. At the relevant times, Mr. Isotti was the direct supervisor of Mark Kanady, Sr., a claims analyst for Lexington. Mr. Isotti assigned to Mr. Kanady the handling of claims against Concentra based on the litigation in this case. Initially, Lexington determined that no defense or coverage was owed to Concentra under its Lexington policy pending exhaustion by Concentra of multiple self-insured retentions of one million dollars per claim. Concentra was informed of Lexington's determination.

According to Mr. Isotti,

> Mr. Kanady's actions in negotiating the settlement on behalf of Concentra were without any authority or knowledge of anyone at Lexington or Heathcare Claims. Additionally, his actions in executing the Settlement Agreement as a representative of Lexington were without any authority or knowledge of Lexington or Heathcare Claims.

\* \* \* \*

> At all times pertinent hereto, Lexington's claims documentation is maintained on a paperless computerized claims system. This is a system in which adjusters and analysts such as Mr. Kanady enter all file notes and correspondence and through which their supervisors can follow significant developments. Mr. Kanady did not document his actions in the *Gianzero* matter claims file. As of June 6, 2012, there were no entries in the computerized claims system indicating a settlement had been negotiated or even was being considered in the *Gianzero* matter. There was no documentation or entries regarding an executed Settlement Agreement.

\* \* \* \*

> Despite his representations to Concentra and Plaintiffs' counsel to the contrary, Mr. Kanady never took steps to request or process payment of the $3,964.489.30 settlement to which he, without the authority to do so, apparently committed Lexington. A settlement in an amount of this magnitude would have required the approval by several layers of management above Mr. Kanady and me. Mr. Kanady's limit of authority to

4

>settle claims was $75,000. Given the coverage position taken by Lexington and communicated to Concentra, Mr. Kanady had no settlement authority at all as respects the *Gianzero* matter.
>
>\* \* \* \*
>
>Mr. Kanady made an expense payment of $35,510.72 in December 2011, apparently under the terms of the Settlement Agreement in the *Gianzero* matter. Because this amount was within his personal claims expense authority, the payment did not require explanation or notification to me or prior approval by me or by Healthcare Claims or by Lexington.

*Isotti affidavit* [#500-1], ¶¶ 10 - 13.

Mr. Isotti says he first learned of Mr. Kanady's purported agreement to Lexington's participation in the settlement of this case when Mr. Isotti received an e-mail late in the day on Wednesday, June 6, 2012. In the e-mail, a Concentra representative inquired why settlement funds had not been paid by Lexington. According to Mr. Isotti, "(t)his was the first that anyone at Lexington or Healthcare Claims, other than Mr. Kanady, was made aware of Mr. Kanady's agreement to the settlement." *Id.*, ¶ 13. Prompted by this e-mail, Lexington evaluated the situation and, on Friday, June 8, 2012, Lexington issued a check for the balance due under the Settlement Agreement, $3,964,489.30. The check was sent to the claims administrator for the class via UPS Next Day Air. The check was deposited on Monday, June 11, 2012, Lexington's bank honored the check on Tuesday, June 12, 202, and the funds were available fully to the claims administrator on Thursday, June 14, 2012. *Supplement* [#498], p. 4.

### III. ANALYSIS

A finding of civil contempt is proper when (1) a valid court order existed; (2) the subject of the order had knowledge of the order; and (3) the subject of the order disobeyed the order. In this case, I conclude that Lexington was not aware of Lexington's purported obligation to pay into the settlement fund until June 6, 2012.

Further I conclude that once Lexington became aware of the Settlement Agreement and the payment deadline, Lexington promptly took action to comply with the court's order approving the Settlement Agreement. Therefore, neither a contemp citation nor a finding of contempt is appropriate.

The plaintiffs argue that the knowledge of Mr. Kanady should be imputed to Lexington. If Mr. Kanady's knowledge is imputed to Lexington, then Lexington knew of the payment deadline before the deadline passed, and Lexington chose to ignore the deadline. As the plaintiffs note, "(i)t is a well settled general rule that notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, his principal." ***Maryland Cas. Co. of Baltimore, Md. v. Queenan***, 89 F.2d 155, 156-57 (10th Cir. 1937).

Under the circumstances present here, imputation of Mr. Kanady's knowledge to Lexington is not appropriate for purposes of sanctioning contempt. Notably, Mr. Kanady was acting far outside the scope of his authority when he agreed to settlement terms obligating Lexington to pay four million dollars into the settlement fund. Further, Mr. Kanady failed to record his actions concerning the settlement in the Lexington claims recording system, thus defeating the primary means via which his actions were monitored by his supervisor, and the primary means via which Lexington could learn of the settlement in a timely fashion. Under these circumstances, it is not appropriate to impute Kanady's knowledge to Lexington.

Once Lexington learned of Kanady's ultra vires actions, Lexington acted promptly to remedy the situation. Despite Kanady's improper and unauthorized actions and circumstances that indicated that Lexington may not have any coverage obligation to

6

Concentra, Lexington arranged to deliver nearly four million dollars to the settlement fund in about five days.  Given the circumstances, I find that Lexington's payment efforts constitute prompt compliance with the court's order approving the settlement, measured from the time Lexington first became aware of the Settlement Agreement and the court's order approving the agreement.  These facts do not show that Lexington failed to act in contempt of this court or that sanctions of any kind are justified. The quintessential purposes of contempt, which focus ultimately on the vindication of the dignity and authority of the court, are not implicated here.

Mr. Kanady's actions no doubt were improper.  However, there is no basis in the current record to find that Mr. Kanady refused to comply with a court order which required him to take action.  Neither the Settlement Agreement nor the court's order approving that agreement require Mr. Kanady to do anything.  Further, there is no indication in the record that Mr. Kanady was served with a copy of the plaintiffs' motion. Mr. Kandy is not a party to this case and does not receive service of filings made in this case.  Service of the plaintiff's motion on Mr. Kanady via e-mail, as reflected in the plaintiffs' **Certificate of Service** [#497], is not sufficient.

### IV.  ORDER

**THEREFORE, IT IS ORDERED** that the **Plaintiffs' Verified Motion for Issuance of Contempt Citation Against Lexington Insurance Company and its Agent Mark Kanady and to Enforce Settlement Agreement and Order Payment of the Amount of $3,964,489.30 from Lexington Insurance Company And/or Defendant Concentra Health Services, Inc.** [#496] filed June 8, 2012, is **DENIED**.

Dated February 25, 2013, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge

8